Adrienne J. **SWEENEY**, as Executrix of the Estate of James Joseph Sweeney, on behalf of and for the benefit of the heirs-at-law of James Joseph Sweeney, deceased, and individually in her own right, Plaintiff,

v.

The **PRESBYTERIAN / COLUMBIA PRESBYTERIAN MEDICAL CENTER,** The Greater New York Blood Center/American Red Cross, John Doe I through John Doe X (fictitious names, the true names being unknown) and James R. Malm, M.D., Defendants.

No. 89 Civ. 0734 (WK).

United States District Court, S.D. New York.

June 20, 1990.

Dennis J. Drasco, Lum, Hoens, Conant & Danzis, New York City, for plaintiff.

Bruce M. Young, Kanterman, Taub & Breitner, P.C., New York City, for defendants James R. Malm, M.D. and The Presbyterian/Columbia Presbyterian Hosp.

Roger K. Solomosy, Killarney, Rein, Brody & Fabiani, New York City, for defendant The Greater New York Blood Center/American Red Cross.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff, Adrienne J. Sweeney, wife of the late James Joseph Sweeney ("Sweeney") and executrix of his estate, brings this medical malpractice and wrongful death action against James R. Malm, Sweeney's former doctor. Dr. Malm moves to dismiss the complaint as time-barred. For reasons which follow, we grant the motion.

## BACKGROUND [1]

On July 3, 1984, Dr. Malm discussed with Sweeney, a patient at Columbia Presbyterian Medical Center, some of the risks of triple bypass heart surgery. He did not tell Sweeney that there was a risk that he might be given a transfusion of blood tainted with the AIDS/HIV virus.[2] Nor did he advise him that he could reduce or eliminate this risk by obtaining his own blood prior to undergoing surgery or by obtaining blood from a friend or family member. On July 6, the surgery was performed. On July 10, in order to counteract complications that had developed, Sweeney was given a blood transfusion. He was thereafter discharged from the hospital. On August 9, 1984, he returned to Dr. Malm for a followup visit during which it was determined that Dr. Malm need provide no further post-operative treatment.

In April 1987, Dr. Malm learned through the "Look Back Program" that the donor who had given the blood with which Sweeney had been transfused had been diagnosed with AIDS. He immediately sent Sweeney a letter requesting that he make an appointment. Having received no response to his first letter, Dr. Malm sent a second on May 13, 1987. On June 16, 1987, Sweeney met with Dr. Malm and gave a

---

1. For purposes of this motion, we resolve all factual disputes in favor of plaintiff.

2. In 1984, it was known that the virus was transmitted via blood transfusion, but no test for identifying tainted blood had been developed.

blood sample. That sample showed his blood to be HIV-positive and, on July 9, 1987, he was so notified.

On December 15, 1987, Sweeney died. The death certificate listed AIDS among the causes of his death.

On October 27, 1989, plaintiff brought this action against Dr. Malm for failure to inform Sweeney of the hazards of blood transfusions and of ways to reduce those hazards.

### DISCUSSION

The complaint alleges two claims: (1) failure to obtain informed consent, a claim which is a species of medical malpractice, and (2) wrongful death based on the informed consent claim.[3] Accordingly, under New York's statute of limitations for medical malpractice, the longest limitations period that could be applicable is two years and six months from the "last treatment where there is continuous treatment for the same illness, injury or condition." N.Y. C.P.L.R. § 214–a. *See also Hoemke v. New York Blood Center* (S.D.N.Y.1989) 720 F.Supp. 45, 46.

Plaintiff argues that the last treatment occurred on June 16, 1987 when Sweeney met with Dr. Malm and had his blood taken and that therefore the suit against Dr. Malm was timely instituted. We cannot agree. It is clear to us that the last treatment in the course of continuous treatment for Sweeney's heart condition occurred during the follow-up visit of August 9, 1984. Since Sweeney died and this action was filed more than two years and six months later, both claims against Dr. Malm are time-barred. To hold otherwise, in addition to departing from the common sense meaning of the words of the statute, would be to discourage any doctors who found themselves in the position in which Dr. Malm found himself from trying to locate former patients whom they have reason to fear may have been infected with AIDS.

### CONCLUSION

We dismiss the complaint against Dr. Malm.

SO ORDERED.

---

**3.** Under E.P.T.L. § 5–4.1, plaintiff in a wrongful death action may recover "against a person who would have been liable to the decedent by reason of such wrongful conduct had not death ensued." Thus, that a malpractice action would not have been time-barred at the time of Sweeney's death is a condition precedent to maintaining the wrongful death claim. *See Kelliher v. New York Central Railroad* (1914) 212 N.Y. 207, 105 N.E. 824.