HECTOR DE LEON, an Infant, by JOYCE DE LEON, His Mother and Natural Guardian, et al., Respondents, v HOSPITAL OF ALBERT EINSTEIN COLLEGE OF MEDICINE et al., Appellants.

First Department, February 5, 1991

744

**APPEARANCES OF COUNSEL**

*Sebastian Randazzo* of counsel *(Mitchel Sommer* with him on the brief; *Randazzo & Giffords,* attorneys), for respondents.

*Edward J. Guardaro, Jr.,* of counsel *(Leah C. Greenman* and *Betty L. Atlas* with him on the brief; *Bower & Gardner,* attorneys), for appellants.

**OPINION OF THE COURT**

CARRO, J.

██ Upon entering a hospital, a patient is entitled to expect appropriate and adequate medical treatment from the hospital and its medical staff and to be generally free from risk of harm. Failure to meet the former expectation gives rise to a claim of medical malpractice, while violation of the latter results in a claim sounding in common-law negligence. Accordingly, while a cause of action alleging medical malpractice on the part of a doctor, nurse or hospital must ordinarily be brought within the 2½-year Statute of Limitations applicable to medical malpractice actions, a cause of action alleging that the hospital was negligent in its hiring of such an employee, who subsequently commits malpractice, is subject to the three-year Statute of Limitations applicable to negligence actions.

The underlying facts of this case concern the birth of the infant plaintiff, Hector De Leon, who was born on September 4, 1977 to plaintiff Joyce De Leon at the Hospital of Albert Einstein College of Medicine (Einstein), a division of defendant Montefiore Hospital and Medical Center. Ms. De Leon contends that at approximately 6:00 A.M. on that date, Hector started to be delivered, i.e., his head was visible and partially out of plaintiff's pudendum (external female genitals) without benefit of a doctor to assist in the delivery; however, she claims that a nurse who was present at this time, "pushed the baby back into the womb." This act, committed by a nurse in Einstein's employ, allegedly resulted in Hector sustaining epiphyseal dysplasia with resultant difficulty in walking, a severe limitation of motion and growth retardation.

Plaintiffs commenced an action by service of a summons and complaint on defendants on or about February 3, 1988.

Issue was joined by the service of a verified answer on behalf of defendants on or about March 25, 1988. Plaintiffs served an amended complaint on or about March 31, 1988, to which defendants responded with an amended answer on or about April 14, 1988.

Nine causes of action are set forth in the complaint. These are, respectively, (1) negligent hiring of hospital personnel; (2) an *in utero* assault upon Hector; (3) a derivative claim by Ms. De Leon for loss of Hector's services as a result of the alleged assault; (4) fraudulent concealment intended to deprive Hector of his right to pursue legal remedies; (5) continuous treatment alleged on behalf of Hector; (6) lack of informed consent based upon defendants' failure to advise Ms. De Leon of risks, hazards and alternative treatments; (7) medical malpractice committed against Hector; (8) fraudulent concealment; and (9) a derivative claim by Ms. De Leon predicated upon the malpractice allegations.

In addition to generally denying plaintiffs' allegations, defendants asserted three affirmative defenses. These are, respectively, Statute of Limitations, failure to comply with CPLR 3017 (c), and failure to comply with CPLR 3012-a. Regarding the Statute of Limitations defense, it is defendants' contention that the entire action sounded in medical malpractice, and was therefore time barred by the 2½-year Statute of Limitations provided for in CPLR 214-a; under CPLR 208, this limitation is extended during infancy for a maximum of 10 years.

Insofar as a malpractice action is concerned, a summons and complaint served February 3, 1988 would exceed such a time period, where the alleged cause of action accrued on September 4, 1977. However, as to the cause of action sounding in negligence, a three-year Statute of Limitations would initially be applicable under CPLR 214; moreover, the 10-year maximum tolling period discussed above does not apply, but would instead expand to 21 years and expire on September 4, 1998. (CPLR 208; *see also*, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C208:1, at 386-387; *cf., Davis v St. Joseph's Children's Servs.*, 64 NY2d 794, 795-796 [1985].)

By notice of motion dated August 23, 1989, plaintiffs moved for an order dismissing the Statute of Limitations affirmative defense, in view of the fact that the action sounds in both negligence and medical malpractice. Among the papers sub-

mitted by plaintiffs was an affirmation by Sidney Siegel, M.D., a disinterested medical witness, which states that "[i]t is my opinion that the act of the nurse was solely a negligent and assaultive act and no way connected with any nursing or medical treatment of the plaintiff or infant plaintiff." Defendants cross-moved to dismiss alleging, *inter alia,* the entire action as time barred, primarily asserting that plaintiffs' claims sounded solely in medical malpractice.

Supreme Court granted plaintiffs' motion and denied defendant's cross motion. We initially note that the motion court's decision did not expressly address the merits of the affirmative defenses of failure to comply with CPLR 3017 (c) and 3012-a, but rather focused on the Statute of Limitations issue. We therefore read the decision of that court to *sub silentio* hold that these other defenses were meritless. For the reasons later to be stated, we affirm that portion of the court's order which dismissed these two affirmative defenses. Holding that plaintiffs timely commenced the within action, the court ruled that the entire action was grounded in simple negligence principles. Relying upon our decision in *Coursen v New York Hospital-Cornell Med. Center* (114 AD2d 254, 256 [1st Dept 1986]), the court first held that "liability may be imposed upon a hospital for its failure to employ competent staff for the treatment of patients." The court further ruled that "[n]either specialized medical knowledge nor professional expert testimony is necessary to determine whether the nurse acted in a reasonably prudent manner."

We agree with Supreme Court that the negligent hiring cause of action sounds in negligence, and was thus timely brought. However, we are of the view, and now hold, that the remaining causes of action do, as defendants assert, sound in medical malpractice, and must therefore be dismissed as time barred by the shorter Statute of Limitations applicable to such actions.

As the Court of Appeals recently reiterated in *Scott v Uljanov* (74 NY2d 673, 675 [1989]), the essential question to be answered in determining the applicable Statute of Limitations is whether "the conduct at issue constituted an integral part of the process of rendering medical treatment to [the patient]." For a cause of action to survive the shorter Statute of Limitations applicable to medical malpractice and continue to be viable under the longer Statute of Limitations applicable to negligence, the gravamen of the complaint should not be negligence in furnishing medical treatment or conduct which

bears a substantial relationship to the rendition of medical treatment by a licensed physician, but rather must point to "the hospital's failure in fulfilling a different duty." *(Bleiler v Bodnar,* 65 NY2d 65, 72-73 [1985].) Courts must therefore " 'look for the reality and the essence of the action and not its mere name' ". *(Tighe v Ginsberg,* 146 AD2d 268, 271 [4th Dept 1989], quoting *Brick v Cohn-Hall-Marx Co.,* 276 NY 259, 264.) Where "[n]either specialized medical knowledge nor professional expert testimony is necessary to determine" the nature of the duty to the plaintiff which has allegedly been breached, and whether or not due care was exercised, an action sounds in simple negligence. *(Coursen v New York Hospital-Cornell Med. Center,* 114 AD2d 254, 257, *supra; Bleiler v Bodnar,* 65 NY2d, *supra,* at 72; *compare, Huntley v State of New York,* 62 NY2d 134, 136-137 [1984].)

Mindful of these tenets, we find that we cannot agree with plaintiffs that in determining whether the nurse's acts constituted negligent conduct, the trier of fact could rely on common knowledge and would require no expert testimony. Rather, we agree with defendants, who persuasively argue that notwithstanding the affirmation of Dr. Siegel, the nurse's alleged conduct was within the realm of the exercise of professional judgment—whether good or bad—allegedly exercised by the nurse. *(See, De Falco v Long Is. Coll. Hosp.,* 90 Misc 2d 164, 172 [Sup Ct, Kings County 1977], *affd* 62 AD2d 1180 [2d Dept 1978] [holding that expert testimony was required despite the fact that hospital nurse's act of picking up contaminated eyepatch from the floor and placing it on the eye of the plaintiff, who subsequently developed infection, was "obviously not in accord with good nursing practice" and unsanitary as a matter of common sense].) The nurse's conduct must, in our opinion, be deemed to have "constituted an integral part of the process of rendering medical treatment" under *Scott v Uljanov* (74 NY2d, *supra,* at 675), regardless of the fact that it was inappropriate; indeed, the alleged inappropriateness is the basis of the malpractice claims. This holding is in keeping with the Court of Appeals caution in *Bleiler (supra,* at 71), which, in holding that nurses may be held liable for malpractice, noted that " 'the role of the registered nurse has changed * * * to that of an assertive, decisive health care provider' ". Further, because in reality the second through ninth causes of action all stem from this alleged malpractice, the motion court should have dismissed them as time barred, which we do now. *(See, Tighe v Ginsberg, supra.)*

■ As to the first cause of action, which sufficiently alleges that the hospital was negligent in hiring this assertive, decisive health care worker, who apparently adopted such a novel approach to childbirthing, we are in agreement with the motion court that that cause of action sounds in negligence, and was therefore timely commenced. While we are aware that our decision appears to be in conflict with the Third Department's holding in the case of *Perkins v Kearney* (155 AD2d 191, 192-193 [3d Dept 1990]), we nevertheless believe it to be squarely within *Bleiler (supra)*. In *Bleiler,* the Court of Appeals held to be timely, under the three-year negligence Statute of Limitations, "claims that the hospital failed to provide competent medical personnel and to promulgate and enforce appropriate regulations and procedures". (65 NY2d, *supra,* at 74.) That court expressly noted that "[w]here a claim for breach of duty to use due care in the selection of doctors and nurses, and to furnish competent medical personnel, has been recognized * * * the requisite elements have been *markedly different* from a malpractice cause of action." *(Supra,* at 73 [emphasis added].)

In *Perkins (supra,* at 192), the Third Department, purporting to rely upon the subsequent case of *Scott v Uljanov (supra),* dismissed claims alleging breach of a duty to instruct, train, educate and supervise defendant hospital's staff, "which would have enabled rendition of proper care to plaintiff," holding that the claims ultimately regarded defendant's failure to treat and care. That court held that expert testimony was required in this regard and specifically held that "[t]he functions of these personnel constitute an integral part of the process of rendering medical treatment and allegations of inadequacy do not remove or change their roles from that of medical malpractice to simple negligence". *(Perkins v Kearney,* 155 AD2d, *supra,* at 193.)

We find ourselves unable to harmonize our decision in the case at bar with the rationale in *Perkins (supra),* which would seem to call for a holding in favor of defendants herein. While the subject cause of action seems to incorporate certain aspects of the time-barred malpractice claims, negligent hiring of an employee who *subsequently* commits acts of malpractice does not constitute a breach of an integral part of rendering medical treatment, but rather derives from the hospital's failure to fulfill a different, more general duty to the patient. *(See, Kerber v Sarles,* 151 AD2d 1032 [4th Dept 1989]; *cf.,*

*Zellar v Tompkins Community Hosp.,* 124 AD2d 287, 289 [3d Dept 1986].) If plaintiffs can meet the burden of establishing that the hospital failed in its duty to select and provide personnel and that this failure was the proximate cause of the injuries alleged, then they should prevail in their negligence cause of action. In any event, they should be deprived of their day in court.

In view of our determination, we need not reach the remaining issues as they are rendered academic. Insofar as the pleading requirement of CPLR 3017 (c) is concerned, the issue is rendered moot by our dismissal of the causes of action stemming from medical malpractice. *(Compare, Papa v Brunswick Gen. Hosp.,* 132 AD2d 601, 604 [2d Dept 1987].) Similarly, the alleged failure to comply with CPLR 3012-a, which requires a certificate of merit to be filed with the complaint in medical malpractice actions, is now irrelevant, since the only remaining cause of action sounds in negligence.

Accordingly, the order of the Supreme Court, Bronx County (Barry Salman, J.), entered November 9, 1989, which granted plaintiffs' motion to strike defendants' first, second and third affirmative defenses, and denied defendants' cross motion to dismiss the complaint as being time barred for exceeding the Statute of Limitations, and for failing to comply with CPLR 3012-a, should be unanimously modified, on the law, to the extent of denying plaintiffs' motion to strike the affirmative defenses raised, and grant defendants' cross motion to the extent of dismissing the second, third, fourth, fifth, sixth, seventh, eighth and ninth causes of actions, and otherwise affirmed, without costs.

SULLIVAN, J. P., WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, Bronx County, entered November 9, 1989, unanimously modified, on the law, to the extent of denying plaintiffs' motion to strike the affirmative defenses raised, and grant defendants' cross motion to the extent of dismissing the second, third, fourth, fifth, sixth, seventh, eighth and ninth causes of actions, and otherwise affirmed, without costs.