Adrienne J. SWEENEY, as Executrix of the Estate of James Joseph Sweeney, on behalf of and for the benefit of the heirs-at-law of James Joseph Sweeney, deceased, and individually in her own right, Plaintiff,

v.

The PRESBYTERIAN/COLUMBIA PRESBYTERIAN MEDICAL CENTER, the Greater New York Blood Center/American Red Cross, John Doe I through John Doe X (fictitious names, the true names being unknown) and James R. Malm, M.D., Defendants.

No. 89 Civ. 0734 (WK).

United States District Court,
S.D. New York.

May 10, 1991.

Dennis J. Drasco, Lum, Hoens, Conant, Danzis & Kleinberg, New York City, for plaintiff Adrienne J. Sweeney.

Kevin J. Kohn, Kanterman, Taub & Breitner, P.C., New York City, for defendant Presbyterian/Columbia Presbyterian Medical Ctr.

Roger K. Solymosy, Killarney Brody & Fabiani, New York City, for defendant Greater New York Blood Center/American Red Cross.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

By memorandum and order dated June 20, 1990 we dismissed the complaint in this action as against Dr. Malm on the ground that the New York State statute of limitations for medical malpractice actions barred all claims against him. *Sweeney v. Presbyterian/Columbia Presbyterian Medical Center* (S.D.N.Y.1990) 738 F.Supp. 802. Familiarity with that decision is presumed. Defendant Presbyterian/Columbia Presbyterian Medical Center (hereinafter "Presbyterian" or "defendant") now moves pursuant to Fed.R.Civ.P. 12 to dismiss the claims asserted against it on the ground that they also sound in medical malpractice and are similarly time-barred. For the reasons that follow, we deny this motion.

## BACKGROUND

We summarize only those facts necessary to an understanding of the questions raised by this motion.

On July 6, 1984 the decedent James Sweeney underwent triple bypass heart surgery at Presbyterian Hospital; and on July 10, while under the supervision and care of Presbyterian, he was given a blood transfusion. Three years later, in June 1987, he was informed that the blood he had received during the transfusion may have been tainted with the HIV virus, and on July 9, 1987 he learned that he tested positive for the HIV virus. Five months later, on December 15, he died of AIDS. On February 14, 1989, one year and two months after his death, his widow, who is also the executrix of his estate, commenced the instant survival and wrongful death action.

As against Presbyterian, the complaint alleges that Presbyterian was "negligent" in its performance of its duty to obtain "safe" blood for transfusions; and that such negligence was the direct and proximate cause of Sweeney's contraction of AIDS, the pain and suffering related thereto, and his ultimate death. *See* Compl. First Count ¶¶ 15,16. Specifically, the complaint asserts that "it was the duty of defendant, Presbyterian Hospital ... to appropriately test ... blood for contaminants, including HIV, to utilize 'surrogate testing' for hepatitis B virus, to procure said blood from sources which adequately screened potential donors, ... and to provide a 'directed donation' program, whereby specific donated blood could be targeted for particular recipients", *id.* at ¶ 14; and that Presbyterian failed so to perform. Both the survival and wrongful death claims are based on this asserted negligence.

## DISCUSSION

■ The dispute between the parties turns on whether, as with Dr. Malm, the complaint against Presbyterian alleges malpractice, governed by the two and one-half year statute of limitations set forth in N.Y. CPLR § 214–a, or whether it essentially sounds in negligence, governed by the longer three year statute of limitations, calculated from the date of discovery of the injury, as set forth in CPLR §§ 214, 214–c.[1] Presbyterian contends that despite the use

---

1. § 214–c provides in relevant part that:
   [T]he three year period within which an action to recover damages for personal injury ... caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body ... must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

of the term "negligence" in the complaint, the actual wrongdoing alleged constitutes medical malpractice. In support of its position, it asserts that the question of whether or not a hospital exercised due care in its blood-screening procedures is not a matter easily discernible by a jury on common knowledge, but will require expert medical testimony, the critical distinguishing feature of a medical malpractice case. Citing *Khan v. New York Blood Center, Inc., et al.* (N.Y.Sup.Ct.1990) Index No. 4694/90, it further argues that transfusing blood bears such a substantial relationship to medical treatment that actions arising out of this service are by nature medical malpractice actions. Def.Mem. at 11–12. Plaintiff responds that the complaint properly states a claim for negligence.

In *Bleiler v. Bodnar, et al.* (1985) 65 N.Y.2d 65, 489 N.Y.S.2d 885, 479 N.E.2d 230, the New York Court of Appeals addressed the distinction between claims which sound in malpractice and those which sound in negligence and held that conduct which "constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" is medical malpractice, whereas conduct such as a claim that a hospital failed to provide a patient with competent and qualified nurses or failed to promulgate rules requiring doctors to take adequate medical histories from patients sounds in negligence. The *Bleiler* Court expressly noted that "[a] hospital in a general sense is always furnishing medical care to patients, but clearly not every act of negligence toward a patient would be medical malpractice". 65 N.Y.2d at 74, 489 N.Y.S.2d at 890, 479 N.E.2d 230.

Applying this analysis to the facts before us, we find that the claim that a hospital failed to employ procedures which would adequately insure that the blood it obtained for transfusions was not toxic is most closely analogous to a claim of failure to hire competent employees or failure to provide functioning wheelchairs to patients. *See e.g., DeLeon v. Hosp. of the Albert Einstein College of Medicine* (1st Dept. 1991) 164 A.D.2d 743, 566 N.Y.S.2d 213; *McCormack v. Mount Sinai Hosp.* (2nd Dept.1981) 85 A.D.2d 596, 444 N.Y.S.2d 702. The nature of this claim is not such that it calls into question the competency of the medical decisions made regarding Sweeney's treatment; the complaint does not allege that the decision to give Sweeney a transfusion was wrongful, nor does it—as was the case in *Khan*—charge that the hospital was negligent in the manner in which it administered the transfusion.[2] Rather, the instant claim challenges the competency of the hospital as a supplier of a particular product, namely blood. As such, the requisite elements of this claim are that the hospital failed to exercise reasonable care in selecting and furnishing blood—as judged by comparison to the blood-screening procedures then available or employed by other hospitals in the relevant community—and that such failure was a proximate cause of Sweeney's injury and death; elements which are markedly different from medical malpractice, and which do not necessitate expert medical knowledge. *See DiMarco v. Hudson Valley Blood Services* (Brx.Sup.Ct.1988) 141 Misc.2d 59, 532 N.Y.S.2d 488, *rev'd on other grounds,* 147 A.D.2d 156, 542 N.Y.S.2d 521 (action against blood center for HIV contaminated blood lies in negligence); *John Doe v. New York Hospital* (N.Y.Sup.Ct.1990) 148 Misc.2d 756, 561 N.Y.S.2d 326 (action against hospital for failure to adequately screen blood for HIV virus sounds in negligence).

■ A similar analysis applies to plaintiff's claim that the hospital was negligent in failing to provide for "directed donation" of blood, i.e. a procedure by which relatives of, or persons known to, the patient may donate blood for that patient's intended

---

**2.** Such claims, as well as claims that the hospital failed to adequately inform the patient of the danger of transfusions, would sound in medical malpractice. *See Murriello v. Crapotta* (2nd Dept.1976) 51 A.D.2d 381, 382 N.Y.S.2d 513; *cf. Khan* at 4 ("This Court is of the opinion that the Hospital's role in this case namely, the act of transfusing the blood … 'bears a substantial relationship' to medical treatment and the decision to perform the transfusion is the product of medical opinion.")

use. The complaint does not allege that Presbyterian led either plaintiff or his doctor to make an erroneous decision as to whether or not to seek a directed donation (which would have been a claim of malpractice), but rather that it was negligent in failing to provide the mechanism for the making of such a decision.

Accordingly, we conclude that the claims against Presbyterian sound in negligence.

 New York courts having recognized blood contaminated with the HIV virus as a toxin within the meaning of CPLR § 214–c, *see DiMarco v. Hudson Valley Blood Services* (1st Dept.1989) 147 A.D.2d 156, 542 N.Y.S.2d 521, *Prego v. City of New York* (2nd Dept.1989) 147 A.D.2d 165, 541 N.Y. S.2d 995, so that the three year statute of limitations would not have begun to run until the day on which the injury was discovered or with reasonable care should have been discovered. There could not possibly have been such discovery before Sweeney learned that he might have received tainted blood in the transfusion, an event which occurred just six months before his death. It follows that any negligence cause of action which Sweeney might then have asserted was available to his executor when this action was filed fourteen months after his death, and that any conceivable limitations deadline has been satisfied. *See* N.Y. EPTL § 11–3.2(b) (survival action is timely where action by decedent would have been timely, "No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed."); N.Y. EPTL § 5–4.1 (wrongful death action "must be commenced within two years after the decedent's death", and may be maintained only against persons "who would have been liable to the decedent ... if death had not ensued").

### CONCLUSION

Presbyterian's motion to dismiss the complaint is denied. As this motion was based solely on the theory that the complaint alleges a claim sounding in medical malpractice (which would have been time-

barred), we express no view as to the merits of any claim of negligence.

SO ORDERED.