**John DOE and Jane Doe, Plaintiffs,**

v.

**The AMERICAN NATIONAL RED CROSS, a corporation, Defendant.**

**No. 91–C–897–C.**

United States District Court, W.D. Wisconsin.

June 18, 1992.

Joseph D. Becker, Sauer, Becker, Flanagan & Lynch, La Crosse, Wis., for John and Jane Doe.

Donald K. Schott, Quarles & Brady, Madison, Wis., for The American Nat. Red Cross.

## OPINION AND ORDER

CRABB, Chief Judge.

Plaintiffs brought this civil action against defendant on October 19, 1991, alleging, *inter alia*, that John Doe contracted the HIV virus as a result of defendant's negligence in screening blood donors and testing blood for use in transfusions. Presently before the court are cross motions for summary judgment on the issue whether plaintiffs' claims are barred by the statute of limitations. In the event the issue is decided in plaintiffs' favor, defendant wants the court to determine that its actions are governed by a professional standard of care, rather than by an ordinary standard of care.

Plaintiffs contend that this case is governed by Wis.Stat. § 893.54, the personal injury statute of limitations. If they are correct, their claims are not barred because they filed this case within three years of their discovery of the injury. Defendant contends that the case is governed by the shorter one-year medical malpractice statute of limitations, Wis.Stat. § 893.55, and that plaintiffs' claims are time-barred under this statute and would be time-barred under either Minnesota's medical malpractice statute of limitations if that state's law were held to be applicable.

I conclude that defendant provides professional health care to others through its collection, processing, and distribution of blood for ultimate use in blood transfusions. I conclude also that because defendant is a "health care provider," this case is governed by the Wisconsin medical malpractice statute of limitations, Wis.Stat. § 893.55, and that plaintiffs' claims are barred because they were not brought within the time provided for by that statute. It is unnecessary to resolve the choice of law and standard of care issues briefed by the parties.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 3552.

For the sole purpose of deciding this motion for summary judgment, I find from

the parties' proposed findings of fact that the following material facts are undisputed.

## UNDISPUTED FACTS

*Background Facts*

Plaintiffs John and Jane Doe are husband and wife and are adult citizens of the State of Wisconsin. Defendant American National Red Cross is a not for profit corporation organized and existing by an act of the Congress of the United States. It is a citizen of the District of Columbia, where its national headquarters and principal place of business are located.

Defendant operates a blood services region in St. Paul, Minnesota, referred to as St. Paul Regional Blood Services or St. Paul Region. As an unincorporated unit of the Red Cross, the St. Paul Region collects, processes and distributes blood from volunteer donors and supplies blood to hospitals for use in transfusions. The St. Paul Region is one of over fifty unincorporated blood services units of the American Red Cross.

Transfusion medicine includes the collecting, testing, processing and storing of human blood and blood components and the transfusing of blood to medical patients to treat disease and injury. Both the collection and the transfusion aspects of the profession require medical judgments based on specialized training and experience in order to minimize risks to transfusion recipients from such dangers as transmission of infectious diseases and incompatibility, both of which can cause severe medical reactions, including death.

Defendant promulgates policies and rules for its blood service regions, including the St. Paul Region. The policies and procedures, including those for donor screening and blood testing, were promulgated by the defendant's national headquarters and implemented by the St. Paul Region. The St. Paul Region promulgated policies and procedures required or permitted by the national policies and procedures. The St. Paul Region provides clinical services for medical patients, including therapeutic phlebotomy, the invasive procedure by which blood is drawn, and therapeutic apheresis.

Defendant is licensed by the Federal Drug Administration to engage in blood collection services. Defendant's Blood Services are licensed, regulated and inspected by the Center for Biologics Evaluations and Research of the Food and Drug Administration.

Federal regulations require that a qualified physician conduct or supervise virtually every step of blood banking. Defendant conducts its blood services activities, including screening volunteer blood donors and testing blood, through its professional medical employees, including physicians. Physicians, or persons acting under the supervision of physicians, determine whether prospective donors should donate blood by taking their medical histories and administering a limited physical examination, including examination of the donor's temperature, pulse, blood pressure, and hemoglobin count and of the donor's arms for evidence of intravenous drug use or infectious skin diseases. Blood is drawn by an invasive medical procedure known as phlebotomy.

Blood must be matched carefully for compatibility before it can be transfused into a patient to prevent rejection or other serious reactions in the recipient. In the process of screening blood donors and testing blood, therefore, blood services providers determine the blood type and other characteristics of each unit of blood in order to protect the health of patients who will receive the blood. Hospitals that receive blood from defendant rely on defendant's expertise in collecting, testing, and processing the blood.[1] Defendant provides blood to transfusing facilities without

---

1. Plaintiffs dispute many of the foregoing facts on the grounds that they are vague, immaterial, or overbroad. Plaintiffs object also to certain words proposed by defendant such as "medical expertise" and "patient treatment." I have omitted references to such words. However, those facts that I found to be material and not vague or overbroad have been included for purposes of this motion.

knowledge of the identity of transfusion recipients.

*Facts Specific to this Case*

On December 26–28, 1983, John Doe was hospitalized at St. Joseph's Hospital in Arcadia, Wisconsin, with gastrointestinal bleeding. On December 27, 1983, he received a transfusion of two units of packed blood cells, and on December 28, 1983, he received another transfusion of two units of packed blood cells. Blood identified as unit number 17M30013 was one of the units transfused into John Doe's body on December 28, 1983. This blood was collected by defendant's St. Paul Regional Blood Services on December 8, 1983.

On or about August 22, 1988, the St. Paul Chapter received a report by telephone from Richard Danilla of the Minnesota Department of Health that the donor of unit number 17M30013 had tested positive for HIV antibodies. On November 2, 1988, Robert J. Bowman, M.D., Medical Director of the American Red Cross, wrote a letter to John F. Peterson, M.D., of St. Joseph's Hospital, notifying him that the donor of unit number 17M30013 had tested positive for HIV and requesting that St. Joseph's Hospital determine who received that unit.

In response to the November 2, 1988 letter, St. Joseph's Hospital informed defendant in writing that unit number 17M30013 was transfused to plaintiff John Doe on December 28, 1983. Prior to St. Joseph's response, defendant did not know the name of the transfusion recipient.

On December 15, 1988, John Doe received a phone call from St. Joseph's Hospital and was informed that he may have received a contaminated unit of blood and that he should have his blood tested. On December 16, 1988, John Doe had his blood tested for HIV at the Mayo Clinic in Rochester, Minnesota, and was informed that same day that he tested HIV antibody positive. Jane Doe was notified on December 16, 1988, that her husband had tested positive for the HIV antibody.

Plaintiffs filed this action against defendant on October 18, 1991. Neither John nor Jane Doe asked defendant to provide health care to them.

## OPINION

The threshold issue to be decided is whether plaintiffs' action is governed by the medical malpractice statute of limitations, Wis.Stat. § 893.55, or by the personal injury statute of limitations, Wis.Stat. § 893.54.[2] These statutes provide:

893.55. Limitation of actions; medical malpractice

(1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

893.54. Injury to the person

... the following actions shall be commenced within six years:

\*     \*     \*     \*     \*     \*

(5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated....

If the Wisconsin medical malpractice statute of limitations is applicable, it renders the choice of law issue moot because plaintiffs' claims are barred under Minnesota's personal injury and medical malpractice statutes of limitations.

---

**2.** The parties have briefed the question whether Wisconsin or Minnesota law should be applied to this case. The relevant Minnesota statutes are Minn.Stats. §§ 541.07(1) and 541.05 subd. 1(5). Minn.Stat. 541.07 provides:

... the following actions shall be commenced within two years:
(1) ... all actions against physicians, surgeons, dentists, other health care professionals as defined in section 145.61, and veterinarians, for malpractice, error, mistake or failure to cure, whether based in contract or tort....
Minn.Stat. § 541.05 provides:

The following actions shall be commenced within 3 years or be barred:

(1) An action to recover damages for injuries to the person.

Defendant received the donor's blood on December 8, 1983. Plaintiff John Doe's injury occurred on December 28, 1983, when he was given the blood transfusion. He discovered his injury on December 16, 1988, and plaintiffs filed their claims on October 18, 1991. Because plaintiffs' claims were brought more than one year from the date John Doe discovered his injury and more than five years from the date of the alleged act or omission, plaintiffs' claims would be barred by the Wisconsin medical malpractice statute of limitations.

The parties have offered various arguments on the issue whether blood banks should be considered "health care providers" so as to be included within the medical malpractice statute of limitations. Plaintiffs' primary contentions as to why defendant is not a "health care provider" can be summarized as follows: (1) defendant does not practice medicine, provide health care, or have patients; (2) Wisconsin statutes refer expressly to "health care providers" and "blood banks" within the same statutory provisions, indicating an intent to treat the two differently; (3) Wisconsin's statutory provisions do not include blood banks within the definition of "health care provider;" and (4) defendant's conduct in collecting and selling blood is akin to the conduct of a pharmaceutical manufacturer, not that of a health care provider.

Defendant counters that blood services are medical services because they include: (1) establishing policies and procedures for blood collection that protect the health of donors and help to prevent the transmission of diseases or other adverse reactions to recipients of blood transfusions; (2) evaluating the suitability of the donor of each unit of blood to protect the health of both the donor and the recipient; (3) testing and processing blood to protect the safety of transfusion recipients; (4) consulting with other medical professionals about the therapeutic use of blood; and (5) treating patients in some cases by withdrawing the patient's own blood either for later use in an autologous transfusion or through therapeutic hemipheresis or therapeutic phlebotomy.

In response to plaintiffs' contention that this is not a medical malpractice action because defendant did not have a contractual physician-patient relationship with plaintiffs, defendant asserts that the statute does not require such a contractual relationship, and that even if it did, lack of face-to-face contact between a health care provider and a patient does not preclude the existence of a physician-patient relationship. With respect to plaintiffs' argument that other Wisconsin statutes distinguish "health care providers" and "blood banks," defendant contends that cross-referencing to other statutes is inappropriate because § 893.55 is unambiguous. Defendant contends further that each of the statutes cited by plaintiffs is a regulatory statute with a specific public purpose that is different from that of § 893.55. Finally, defendant contends that it comes within the ambit of the medical malpractice statute under the doctrine of *respondeat superior,* because all of the services claimed to be negligent were performed under the direction of a physician.

Numerous courts have confronted issues similar to the one raised in this case and have reached differing conclusions. In *Miles Labs, Inc. v. Jane Doe,* 315 Md. 704, 556 A.2d 1107 (Ct.App.1989), the court addressed a question certified to it by the United States District Court for the District of Maryland. The question was whether a product liability claim or a negligence claim against the supplier of a blood product fell within the Maryland Health Care Malpractice Claims Act, which required the claims to be against a "health care provider" for a "medical injury." Under the Act, a "health care provider" was defined as "a hospital, a related institution ..., a physician, an osteopath, an optometrist, a chiropractor, a registered or licensed practical nurse, a dentist, a podiatrist, and a physical therapist, licensed or authorized to provide one or more health

care services in Maryland." *Id.* at 740, 556 A.2d at 1125.

The court answered the certified question in the negative:

> We think it manifest that the Red Cross is not a "health care provider" and that the alleged injury in this case is not a "medical injury" within the ambit of the Act's provisions. The claims against the Red Cross are not for medical malpractice of its employees, but for the organization's failure to adopt proper testing and screening procedures to eliminate the contamination of its blood donations.

*Miles Labs*, 315 Md. at 741, 556 A.2d at 1125.

In *Sweeney v. Presbyterian/Columbia Presbyterian M.C.*, 763 F.Supp. 50 (S.D.N.Y.1991), plaintiff alleged that Presbyterian was negligent in failing to obtain safe blood for transfusions. The issue was whether to apply the malpractice statute of limitations or the statute of limitations for negligence. The court found that a claim of failure to employ procedures to insure the safety of blood was analogous to a claim of failure to hire competent employees or failure to provide functioning wheelchairs to patients. *Id.* at 52. Because plaintiff did not allege that the decision to give her husband a transfusion was wrongful or that the manner in which the transfusion was given was negligent, the challenge was not to any medical decisions, but rather to the hospital's competency as a supplier of blood. *Id.* The court commented:

> As such, the requisite elements of this claim are that the hospital failed to exercise reasonable care in selecting and furnishing blood ... and that such failure was a proximate cause of Sweeney's injury and death; elements which are markedly different from medical malpractice, and which do not necessitate expert medical knowledge.

*Id.*

Finally, in *Silva v. Southwest Florida Blood Bank, Inc.*, 601 So.2d 1184 (1992),[3] the family of a patient who contracted AIDS through blood transfusions filed a complaint alleging negligence and breach of warranty. An action for medical malpractice was defined as "a claim in tort or in contract for damages ... arising out of any medical, dental, or surgical diagnosis, treatment, or care by a provider of health care." *Id.* at 1186. The court defined the plain meaning of "diagnosis, treatment, or care" as "ascertaining a patient's medical condition through examination and testing, prescribing and administering a cause of action to effect a cure, and meeting the patient's daily needs during the illness." *Id.* at 1187. The court found that as to the plaintiffs, Southwest was merely the supplier of a product and that the allegations of negligence did not arise out of any diagnosis, treatment, or care. However, the court went on to decide whether, in those cases where a blood bank provided diagnosis, treatment, or care, it could be considered a "health care provider." The court concluded:

> We can find no indication that the legislature intended for blood banks to be considered "providers of health care" for purposes of the medical malpractice statute of limitations. Nor do we find it permissible generally to construe that term broadly. In the absence of clear legislative intent to the contrary, we are not at liberty to construe that term so as to deprive plaintiffs of their causes of action.

*Id.* at 1189.

Other cases applying different state statutes have recognized blood banks as professionals in the medical industry, not merely suppliers of blood. In *Wilson v.*

---

**3.** In its original briefs, defendant cited the decision of the state court of appeals in this case holding that the medical malpractice statute of limitations was applicable to plaintiffs' claims. In a supplemental brief, plaintiffs submitted a copy of the recent state supreme court opinion which reversed the court of appeals. Thereafter, defendant countered that the decision is not a final one because the Southwest Florida Blood Bank submitted a timely motion for rehearing. Although the Florida decision is discussed in this opinion, it is with the understanding that the decision is not yet final.

*Am. Red Cross*, 600 So.2d 216 (1992), the question was whether the collecting and supplying of blood was a health care service for purposes of a state statute that defined "health care provider" as "any professional corporation or any person employed by physicians, dentists or hospitals who are directly involved in the delivery of health care services." *Id.* at 218. The court found persuasive the South Carolina Supreme Court decision in *Doe v. Am. Red Cross Blood Serv.*, 297 S.C. 430, 377 S.E.2d 323 (1989), in which the court held that "[s]ince the transfusion of blood is characterized as a skilled medical service, then we hold that the Red Cross, as a blood collector and processor, should be treated as a professional." *Id.* 377 S.E.2d at 326. In *Wilson* the court noted that the Red Cross was under contract with the University of Alabama hospital to supply blood and that the Red Cross's activities were highly technical and required supervision and participation by a physician or other trained technical personnel. Based on that evidence, the court found that the hospital was an employer of Red Cross and that the Red Cross was involved directly in the delivery of health care services. The court concluded that the Red Cross was an "other health care provider" and stated, "[w]e agree with the South Carolina Supreme Court that the collection and processing of blood for transfusion is a medical service and that the Red Cross, as a blood collector and processor, should be treated as a professional." *Wilson*, 600 So.2d at 218.

In *United Blood Serv. v. Quintana*, 827 P.2d 509 (1992), plaintiffs brought an action against a blood bank contending the blood bank was negligent in supplying a hospital with plasma contaminated with the AIDS virus. The Colorado court was guided by a state statute categorizing the acquisition, preparation and transfer of human blood for transfusions as a medical service. In arriving at its conclusion that the standard of care should be that of a professional based on expert testimony, the court stated:

> Although there possibly might be situations where a blood bank's decision to market human blood or its components

for use in medical transfusion might solely involve business considerations within the knowledge and experience of the average person, rather than specialized knowledge or skill unique to a scientific discipline ... we deal in this case with a negligence claim based on a blood bank's failure to properly screen blood donors and to properly test donated blood for the AIDS virus. The acquisition and preparation of human blood for use in medical transfusion and the safeguarding of donated blood against contamination require the exercise of medical and scientific expertise by health care professionals in both the donor screening and the blood testing stage of the process. Any alleged negligence of a blood bank in performing those operations can occur only by reason of the action or inaction of its officers and employees functioning as health care professionals.

*Id.* at 523. (citation omitted).

Finally, in *Kaiser v. Memorial Blood Center of Minneapolis*, 721 F.Supp. 1073 (D.Minn.1989), *aff'd in part, questions certified*, 938 F.2d 90 (8th Cir.1991), the question presented was whether blood banks should be included as "health care professionals" covered by a two year statute of limitations. The plaintiffs' claims were founded on alleged negligence in selecting donors, screening blood, and warning of the risk of disease through blood transmission. *Id.* at 1075. Rather than speculating what groups the statute might include, the court used a *respondeat superior* theory to conclude that "it is clear that any negligent acts or omissions on the part of defendants occurred through its doctors and nurses who were responsible for setting the blood banks' policies and carrying out its activities." *Id.* at 1076. Therefore, the district court found, the blood bank came within the ambit of the two year statute of limitations.

On appeal, the Court of Appeals for the Eighth Circuit found that in the absence of controlling precedent, and because application of statutes of limitations are of particular interest to Minnesota courts, the question whether the two year statute of limita-

tions applied in that case should be certified to the Minnesota Supreme Court. *Kaiser,* 938 F.2d at 93. The Minnesota Supreme Court has not yet reached a decision on the certified question.

Although the reasoning of other jurisdictions is helpful in analyzing the issue, it is Wisconsin law that must guide the decision in this case. The Wisconsin courts have not addressed the specific question of the classification of blood banks; however, in *Clark v. Erdmann,* 161 Wis.2d 428, 468 N.W.2d 18 (1991), the Supreme Court of Wisconsin confronted a similar issue: whether a negligence action against a podiatrist was governed by the medical malpractice statute of limitations, § 893.55, or by the personal injury statute of limitations, § 893.54. The outcome was dependent upon whether the term "health care provider" included podiatrists. Because no definition of "health care provider" is included in chapter 893, the meaning of that term was not readily apparent. *Id.* at 437, 468 N.W.2d at 21. In ascertaining the statute's meaning, the court found that the " 'initial inquiry is to the plain meaning of the statute'.... If the statute is unambiguous, resort to judicial rules of interpretation and construction is not permitted; the words of the statute must be given their obvious and intended meaning." *Id.* at 438, 468 N.W.2d at 22. (citing *Schmidt v. Employe Trust Funds Bd.,* 153 Wis.2d 35, 44, 449 N.W.2d 268, 270 (1990)). The court found that the plain meaning of the term "health care provider" applied to "anyone who professionally provides health care to others." *Clark,* 161 Wis.2d at 438–39, 468 N.W.2d at 22. Because podiatrists provided health care to others, they were included within the statute's provisions: "[u]nless and until the legislature provides otherwise, we shall regard podiatrists as being 'health care providers' under sec. 893.55." *Id.* at 439, 468 N.W.2d at 22.

Whether a blood bank may be classified as a health care provider is arguably a closer question than whether a podiatrist can be classified as such. However, the Wisconsin supreme court has accorded a broad construction to the term "health care provider." It has taken the plain meaning of the term to include everyone who provides health care to others, unless the legislature specifically provides otherwise.

Applying this broad construction, it would be difficult to conclude that in collecting, processing, and distributing blood from donors for ultimate use in transfusions, defendant is not providing health care to others. Plaintiffs' arguments that defendant did not provide contractual health care to them, that there was no physician-patient relationship between plaintiffs and defendant, and that, generally, defendant's activities are more analogous to a pharmaceutical manufacturer than to a health care provider, are unpersuasive when considered within the context of the *Clark* decision. *Clark* neither prescribed the relationship that must exist between a health care provider and a claimant, nor set forth activities in which a group or person had to be engaged to be considered a health care provider. The court stated plainly that *anyone* who provides health care to others professionally is covered by the medical malpractice statute.

Plaintiffs' attempt to construct a distinction between "health care providers" and "blood banks" by cross-referencing other Wisconsin statutes is inappropriate because § 893.55 is unambiguous. *Clark,* 161 Wis.2d at 438, 468 N.W.2d at 22. Although in *Clark* the court discussed other statutory definitions to support its conclusion, it did so after it had reached its holding, not as a part of its analysis. Moreover, the definition of health care in § 893.55 is not controlled by the definition of the terms used in other statutes enacted for other purposes.

Defendant's activities are an integral part of the health care process, including the screening and testing of donor blood to determine the type and other crucial characteristics of the blood. A transfusion can be administered only after defendant has completed several important steps in readying the blood for the transfusion. Defendant's services are vital in helping to insure the health of the ultimate recipient of the transfusion. I conclude that in light of the *Clark* decision, and consistent with the plain meaning of § 893.55, defendant's col-

lection, processing, and distribution of blood for ultimate use in transfusions are activities of a "health care provider," so that defendant is subject to the provisions of the medical malpractice statute of limitations, § 893.55. Because plaintiffs brought their claims more than one year after the date that John Doe discovered his injury, and more than five years after the alleged act or omission, their claim is barred under that statute. This holding works a great hardship on the plaintiffs, who have been injured grievously by the transfusion of infected blood to John Doe. Arguments could be made, and have been made, for a longer period of limitations for medically-related injuries. Those arguments are for the legislature, which is charged with the difficult task of balancing the interests of injured individuals against other societal interests, such as promoting the prompt litigation of valid claims and protecting defendants from stale claims.

Because summary judgment will be granted to defendant on its statute of limitations defense, it is not necessary to consider the remaining issues in this case.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment on the statute of limitations is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendant and dismiss this case.