*285 OPINION OF THE COURT
Stanley L. Sklar, J.
Does the issuance by a physician of a false statement to a patient’s disability carrier summarizing the physician’s treatment of the patient over a year earlier, which statement results in a disclaimer of coverage, constitute medical malpractice? I hold that it does not.
Plaintiff Dominick Pedulla was a patient of defendant Vincent Andreano, M.D., from June 1988 through the end of 1989. In early 1990 Pedulla applied to defendant, New York Life Insurance Company, for disability coverage. Pedulla asserts that he fully disclosed to New York Life his complete medical history as it related to his visits to Dr. Andreano. The applications were approved and the policies were issued.
On July 4, 1990 Pedulla suffered a heart attack which left him totally disabled and unable to engage in any work for "at least one year”. Pedulla then filed a claim with New York Life. Its representative, David Lyman, asked Dr. Andreano to provide New York Life with Pedulla’s medical history. Lyman apparently interviewed Dr. Andreano and on December 20, 1990 Dr. Andreano signed a "Confirmation of Interview” in which he purportedly detailed his treatment of Pedulla. In that statement Dr. Andreano said that starting in November 1988 he had diagnosed Pedulla as having been mildly to moderately depressed and prescribed specified medication for that condition. Dr. Andreano believed that as of Pedulla’s last visit on November 20, 1989 Pedulla had still been taking that medication, and concluded that due to Pedulla’s depression he had been "partially disabled from 11/88 to 11/20/89”. New York Life denied Pedulla benefits on the ground of an alleged omission of material information.
Pedulla then commenced this suit against New York Life and Dr. Andreano. The fourth cause of action asserts that the statement issued by Dr. Andreano was false because "plaintiff was not in any way disabled, partially or otherwise, as a result of any condition at any time during the period from November 1988 to November 1989, or during any other period prior to July 4, 1990”. The allegations under this cause of action were nebulous and seemed to suggest that the false statement was negligently and intentionally made, and constituted a departure from accepted medical practice.
Dr. Andreano demanded that plaintiff file a notice of medical malpractice action. When Pedulla did not respond to the *286 demand Dr. Andreano moved to compel plaintiff to serve a notice of medical malpractice action. In response Pedulla asserted that since this was not a medical malpractice action he did not have to serve the notice.
In light of the foregoing contradictory allegations contained in the pleading I shall assume, for purposes of this application, that the complaint sets forth in the alternative that the allegedly false statement was either negligently made or intentionally made. (If intentional, a certificate of merit is not required.) That, however, does not resolve whether the negligent issuance by a physician, more than a year after he last saw and treated the patient, of a report created specifically by the physician for the insurer for the sole purpose of assisting the insurer in evaluating an applicant’s claim under an insurance policy, constitutes medical malpractice where there is no claim that the physician, while he was rendering care to the patient, negligently diagnosed or treated the patient, or caused any physical injury to the patient.
Since the court does not have before it Dr. Andreano’s records relating to his treatment of Pedulla, it is not clear in what respect and to what extent those records contradict Dr. Andreano’s December 1990 statement to New York Life that Pedulla was partially disabled. If for example the records specifically recite that Pedulla was fully functional, which is doubtful in light of the fact that Dr. Andreano prescribed medication for Pedulla’s depression, it might be that expert testimony would be unnecessary to establish that Dr. Andreano was negligent in failing to adequately review his records when he issued the statement to New York Life. On the other hand, if the records are equivocal as to Dr. Andreano’s findings, expert testimony may be needed to establish the significance of those findings with respect to whether Dr. Andreano properly concluded and reported that Pedulla had been partially disabled as a result of his depression. However, even if expert testimony is needed, the facts presented in this case do not give rise to a claim sounding in medical malpractice.
Since "medical malpractice is simply a form of negligence, no rigid analytical line separates the two, although for policy reasons the Legislature has chosen to affix different Statutes of Limitations to medical negligence (or malpractice) and negligence generally.” (Scott v Uljanov, 74 NY2d 673, 674 [1989].) Nonetheless, not every breach of a duty on the part of a physician toward a patient gives rise to a medical malprac *287 tice claim. (Tighe v Ginsberg, 146 AD2d 268, 271 [4th Dept 1989].) The issue of whether a physician’s acts or omissions constitute malpractice turns on whether "the conduct at issue constituted an integral part of the process of rendering medical treatment to [the patient].” (Scott v Uljanov, supra, at 675; Bleiler v Bodnar, 65 NY2d 65, 72 [1985]; De Leon v Hospital of Albert Einstein Coll. of Medicine, 164 AD2d 743, 747 [1st Dept 1991].) Although the alleged actions of Dr. Andreano are tangentially related to his treatment of Pedulla, they do not constitute an integral part of the rendition of such treatment. Although Pedulla’s heart attack occurred by happenstance in 1990, one could easily envision a scenario in which New York Life requested a statement from Dr. Andreano 10 or more years after treatment had ended and long after any physician-patient relationship had terminated.
In light of the foregoing, the fourth cause of action does not sound in malpractice. (See also, Millsaps v Bankers Life Co., 35 Ill App 3d 735, 745, 342 NE2d 329, 337 [1976] [physician’s allegedly negligent diagnosis set forth in letters to insurance companies which resulted in denial of coverage did not constitute malpractice since patient was not "injured in (his) body and health”].) Accordingly, Dr. Andreano’s motion to compel plaintiff to file a notice of medical malpractice action is denied.