OPINION OF THE COURT
Aaron D. Bernstein, J.
Following her graduation from a foreign medical school, the *710 plaintiff served as an unpaid extern at the defendant, Kings County Hospital. The "extern program” permitted the New York City Health and Hospitals Corporation (HHC), another named defendant, to observe and evaluate the abilities of medical doctors who did not graduate from medical schools in the United States. If HHC was satisfied with the abilities of the externs, the doctors would probably be offered employment as interns.
In January 1983 while assisting an intern, the defendant Joyce Fogel, M.D., in drawing blood from an AIDS patient, the plaintiff was stuck by a needle which had been used in the treatment of the AIDS patient. The needle had been left among gauze and other refuse on the patient’s bedding. The plaintiff was stuck as she proceeded to clear away what appeared to be ordinary refuse.
The incident was immediately reported to hospital authorities and all assured the plaintiff that her risk of contracting AIDS would be minimal since, at that time, no cases had been reported wherein a health worker had developed AIDS from rendering medical treatment to any AIDS patient.
In March 1985, there was a study at Kings County Hospital to determine the incidents, if any, of AIDS among health care workers. The plaintiff was advised that she had tested positive for the AIDS virus. For more than two years thereafter she exhibited no symptoms that would indicate that she had AIDS. In November 1987 however the plaintiff developed pneumocystics carinii pneumonia (PCP) a parasitic infection indicating that the plaintiff had AIDS. Several months later a notice of claim was filed against the defendants herein and in June of 1988 this action was commenced.
Although the plaintiff has alleged several causes of action, the complaint sounds generally in negligence and breach of contract. In their answers, among other defenses, defendants raised the affirmative defense of Statute of Limitations.
The plaintiff now moves for an order, pursuant to CPLR 3211 (b), dismissing the affirmative defenses which assert that plaintiff’s action is untimely.*
The defendants, HHC, Kings County Hospital and Joyce Fogel, M.D., all cross-move for an order dismissing the com *711 plaint herein, pursuant to CPLR 3211 (a) (5), or, alternatively, for an order granting summary judgment in their favor pursuant to CPLR 3212.
It is defendants’ position that plaintiff’s causes of action accrued in January 1983 when plaintiff was first "injured” (the first exposure to the AIDS virus). For the reasons that follow both the motion and cross motion are denied.
Personal injuries caused by the latent effects of exposure to toxic or harmful substances do not, in many cases, manifest themselves until many years after the last exposure. Under prior New York law, the Statute of Limitations began to run from the date of exposure and not from the date of discovery of the injury. Therefore, a negligence action against the City of New York had to be commenced within 1 year and 90 days from the date of the last exposure to a toxic or harmful substance. This was the rule even in those cases where the injured person was totally unaware of the injury. (Thornton v Roosevelt Hosp., 47 NY2d 780; Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008.)
In July 1986, CPLR 214-c was enacted by the Legislature which created a new rule for determining the accrual date of the Statute of Limitations in cases of toxic torts. In order to remedy the manifold injustices caused by the application of the exposure-based Statute of Limitations, CPLR 214-c was enacted. Under its provision, the Statute of Limitations commenced to run when the injury was discovered or should have been discovered. CPLR 214-c (2) provides as follows: "Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.” (Emphasis added.)
The defendants argue that CPLR 214-c is inapplicable to this case because it refers to manufactured toxic chemicals, rather than to substances like contaminated blood. The defendants further argue that, even assuming that blood infected with the AIDS virus is to be included within the parameters of CPLR 214-c, plaintiff’s claims are still untimely since the *712 action was not commenced within 1 year and 90 days from the date plaintiff learned she had symptoms of AIDS.
Although the Legislature did not enumerate the "substances” to which the statute would apply, the very plain meaning of the underlined material indicates that any "substance” was intended. If the Legislature had intended to make a distinction between natural products and manufactured products, it would have been a very simple task to insert the meaningful words. When the words are simple and clear, the Legislature’s intent may not be secured from any other source but the statute. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76.)
Another very basic rule of statutory construction is to search out the objective of the Legislature. It is very plain from the Legislature’s history that the objective or goal sought by the Legislature was to eliminate the unfair results of the prior case law. As pointed out above, the plaintiff would be barred by the Statute of Limitations by the time the injury was discovered.
Once we find a goal or mischief to be remedied we then can interpret the statute to suppress the evil and advance a remedy. (McKinney’s Cons Laws of NY, Book 1, Statutes § 95.) It is very obvious to this court that the evil sought to be remedied can be caused just as easily by a "natural substance” as that of a "manufactured substance”.
Accordingly, this court finds that the injury caused by blood contaminated with the AIDS virus is a "substance” within CPLR 214-c.
While Di Marco v Hudson Val. Blood Servs. (141 Misc 2d 59) holds to the contrary, this court concludes that that case was incorrectly decided.
Although the plaintiff may use the "discovery rule” of CPLR 214-c, the question still remains whether she asserted her claims in a timely manner. The defendants submit that the plaintiff developed symptoms of AIDS in 1984 and would have, through the exercise of "reasonable diligence”, discovered that she had AIDS and commenced this action within 1 year and 90 days afterward. However, the court cannot rule as to a matter of law that the symptoms the plaintiff exhibited should have indicted to her that she had AIDS. Therefore, there is a question of fact to be determined by the trier of the *713 fact, whether or not the plaintiff commenced her action within the time constraints of CPLR 214-c.
Accordingly, the plaintiffs motion to strike the affirmative defense is denied. The cross motion of the defendant is similarly denied.

 Defendant, Sheldon Landesman, M.D., was only recently served with process and has objected to the motion as premature with respect to him. Following receipt of opposing papers from said defendant, plaintiff has withdrawn so much of its request for relief as applies to him.