PASQUALE DI MARCO et al., Appellants, v HUDSON VALLEY BLOOD SERVICES et al., Respondents.

First Department, June 6, 1989

APPEARANCES OF COUNSEL

*Salvatore J. Calabrese* of counsel *(Sweeney & Calabrese,* attorneys), for appellants.

*Roger K. Solymosy* of counsel *(Neil Brody, Jeremy Heisler* and *Kevin B. Pollak* with him on the brief; *Killarney Rein Brody & Fabiani,* attorneys), for respondents.

## OPINION OF THE COURT

ELLERIN, J.

In January 1985, while undergoing open heart surgery at Westchester County Medical Center, plaintiff Pasquale Di-Marco received numerous blood transfusions. The defendants, two blood banks, supplied the blood which plaintiff received during this operation. Mr. DiMarco discovered that he had contracted the disease acquired immune deficiency syndrome (AIDS) when in July 1986 he was contacted by defendant New York Blood Center-Greater New York Blood Bank and alerted that he had received contaminated blood during the transfusion. From July 1986 through November 1987, plaintiff underwent testing and treatment by this defendant for AIDS.

In April 1988, he commenced this action against the two defendant blood banks, alleging in the complaint that he contracted the disease from contaminated blood supplied by the defendants during his surgery, and asserting two causes of action, one sounding in medical malpractice and the other in negligence, based on a theory that the defendants were negligent in their failure to test for AIDS the blood which was transfused into his body.

Instead of answering the complaint, the defendants moved pursuant to CPLR 3211 (a) (5) to dismiss the complaint on the ground that it is time barred by the expiration of the Statute of Limitations. The IAS court granted the motion and dismissed both causes of action.

The plaintiff does not appeal from the dismissal of the medical malpractice claim. Accordingly, our attention is focused solely on the negligence cause of action.

The Statute of Limitations for a negligence action brought to recover damages for personal injury is three years (CPLR 214). On the motion, it was defendants' position that the cause of action accrued when the plaintiff was injured—that is, when he was exposed to the allegedly contaminated blood in January 1985—and, that, therefore, this action, commenced

on April 12, 1988, 3 years and 3 months after the exposure to the blood, was untimely.

In response, plaintiff contended that the negligence cause of action arose at the time Mr. DiMarco first discovered the injury, July 1986. Plaintiff relied on CPLR 214-c (2), which provides that "the three year period within which an action to recover damages for personal injury * * * caused by the latent effects of exposure to any substance * * * shall be computed from the date of discovery of the injury by the plaintiff". Plaintiff argued that since his injury was caused by the latent effects of his exposure to the contaminated blood, his action did not accrue until his discovery of the latent injury, in July 1986, and, therefore, this action, commenced less than three years from that date, is timely.

In reply, the defendants asserted that CPLR 214-c applies only to toxic tort victims who had been unknowingly exposed to toxic chemicals and not to natural substances such as contaminated blood.

The IAS court adopted the defendants' position and ruled that the statute does not apply to the negligence cause of action asserted by plaintiff. The court held that CPLR 214-c was meant to apply only to actions arising from the latent effects of exposure to certain toxic substances or materials. The court then described AIDS as a "virus/disease", which in its opinion "does not fall within the ambit of a 'toxic' substance exception created by CPLR 214-c" (141 Misc 2d 59, 62).

On this appeal we must determine whether CPLR 214-c should encompass within its remedial scope situations, such as the one before us, where the plaintiff's injury is caused by the latent effects of exposure to contaminated blood.

Generally, in the construction of statutes, the intention of the Legislature is first to be sought from a literal reading of the act itself or of all the statutes relating to the same general subject matter. In this respect, the legislative intent is to be ascertained from the words and language used in the statute, and if the language thereof is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation. (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b].)

The language of CPLR 214-c is as follows:

"§ 214-c. Certain actions to be commenced within three years of discovery

"1. In this section: 'exposure' means direct or indirect

exposure by absorption, contact, ingestion, inhalation or injection.

"2. Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure *to any substance or combination of substances, in any form,* upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." (Emphasis added.)

The language of this statute is unambiguous and the words "plain and clear". The statute applies to injuries caused by the latent effects of exposure to any substance or combination of substances in any form. The Legislature did not enumerate the substances to which the statute would apply, or otherwise impose any limitation on the language. The statute applies to "any substance", and certainly the contaminated blood to which plaintiff was allegedly exposed is a "substance".

By its terms, the statute clearly applies to the circumstances of plaintiff's action, an action "to recover damages for personal injury * * * caused by the latent effects of exposure to any substance". Here, plaintiff seeks to recover for his injuries in contracting the deadly disease AIDS in 1986 caused by the latent effects of his exposure to the contaminated blood in January 1985.

Despite the plain meaning of the statute, the defendants argue that we should resort to an examination of the legislative history of CPLR 214-c for guidance to its interpretation. However, an examination of its legislative history provides even stronger support for applications of the statute to a case of this type.

The legislative history reveals that CPLR 214-c was enacted to remedy a widespread injustice of the common-law rules in determining the time of accrual of an action. The New York courts had steadfastly refused to alter the ancient doctrine that in tort cases the Statute of Limitations runs from the date the injury is inflicted, regardless of when the injury is actually discovered. The Court of Appeals on numerous occasions stated that if change were to be made it would have to come from the Legislature. *(See,* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-

c, 1989 Pocket Part, at 329; *e.g., Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008; *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, *cert denied* 374 US 808.) Accordingly, as part of a comprehensive bill (L 1986, ch 682), which addressed other inequities of tort law as well, the Legislature enacted CPLR 214-c to ameliorate the harsh effect of this ancient common-law rule, which often prevented recovery by a person exposed to a toxic or harmful substance who would not be aware of the injury at the time it was inflicted but only at a later date when the latent effects of the harm would first manifest itself.

The widespread therapeutic intent of CPLR 214-c is emphasized in the executive memorandum of the Governor, upon the signing of the act into law, which states:

"This measure, commonly referred to as the 'Toxic Torts' bill, remedies a fundamental injustice in the laws of our State which has deprived persons suffering from exposure to toxic or harmful substances from having an opportunity to present their case in court. That injustice results from an archaic rule which commences the three year time period for suit on the date that an exposure occurs. The rule fails to recognize that the adverse effects of many of these toxic substances do not manifest themselves until many years after the exposure takes place. In such cases, a person is barred from court before he or she is aware of any injury.

"This bill, which is part of my 1986 legislative program, repeals that archaic rule and replaces it with a fair and simple rule which permits a person to discover his or her injury before the statutory time period for suit begins to run. In enacting this law, New York joins more than 40 other states which have legislatively or judicially created a statute of limitations discovery rule." (1986 McKinney's Session Laws of NY, at 3182-3183.)

Accordingly, the clear purpose of the statute is to remedy the fundamental injustice to victims suffering latent injuries, as described in the Governor's memorandum. The statute is broad and all-encompassing and should be interpreted to give effect to its stated purpose.

In the instant case, plaintiff was injected with blood contaminated with the AIDS virus. While the AIDS disease is still not completely understood by the medical profession, it is known to have a dormant quality which may not manifest itself in its victims for many years after a person is exposed to

the virus. A victim of AIDS may not be aware of the adverse effects of the disease until long after its infliction. Therefore, when a person suffers injury by virtue of the negligent infliction of the AIDS virus in conjunction with a blood transfusion, but discovery of the disease occurs more than three years after the transfusion, the party would be barred from bringing the action by virtue of the ancient rule that the Statute of Limitations accrues at the time of infliction of the injury. This is precisely the situation which CPLR 214-c seeks to remedy, and to which it should clearly apply.

Defendants also contend that the legislative history indicates an intent to apply CPLR 214-c only to instances where the injury is caused by exposure to toxic, man-made manufactured substances, such as dangerous drugs or chemicals. Defendants point to the various landmark Court of Appeals cases which highlighted the problem and stimulated this remedial legislation, such as *Schmidt v Merchants Desp. Transp. Co.* (270 NY 287 [industrial dust]), *Schwartz v Heyden Newport Chem. Corp.* (12 NY2d 212 [Umbrathor, a cancer causing chemical]), *Thornton v Roosevelt Hosp.* (47 NY2d 780 [thorium dioxide]), *Fleishman v Lilly & Co.* (62 NY2d 888 [DES]), and *Matter of Steinhardt v Johns-Manville Corp.* (54 NY2d 1008, *supra* [asbestos]). Defendants also refer to various documents in the Bill Jacket, including messages from labor unions, government officials, and public interest groups, which recommend approval of the bill because of its salutary effect on persons injured in the workplace by toxic industrial substances or parties harmed by the latent effects of unsafe drugs.

It is true that part of the impetus for this remedial legislation was the harmful effect of existing law on victims of manufactured toxic substances such as those described. However, whatever the defendants' selective view of the legislative history, neither that history nor the statutory language itself indicate that relief was to be limited to those injured by manufactured substances. If the Legislature intended to make a distinction between natural substances and manufactured products, it would have so stated. Instead, the clear import of the statute, by its own plain language, is that it applies to latent injuries suffered from exposure to *any substance* or combination of substances, in any form. *(See, Prego v City of New York,* 141 Misc 2d 709.) Latent effects of exposure to contaminated blood clearly come within the ambit of CPLR 214-c.

In this action where plaintiff alleges injuries as a result of the latent effects of defendants' negligence in exposing him to blood infected with the AIDS virus, the Statute of Limitations shall be computed as of the date of plaintiff's discovery of his illness, in July 1986, and the commencement of this action on April 12, 1988, within three years from that date, was timely.

Accordingly, the order of the Supreme Court, Bronx County (Jack Turret, J.), entered August 31, 1988, which granted defendants' motion to dismiss the complaint on the ground that the action is time barred, should be reversed to the extent appealed from, on the law, to reinstate plaintiffs' first cause of action, sounding in negligence, without costs. Defendants are directed to answer the complaint within 20 days of the entry of this court's order.

KUPFERMAN, J. P., ROSS, CARRO and WALLACH, JJ., concur.

Order, Supreme Court, Bronx County, entered on August 31, 1988, unanimously reversed to the extent appealed from, on the law, without costs and without disbursements, to reinstate plaintiffs' first cause of action, sounding in negligence. Defendants are directed to answer the complaint within 20 days of the date of entry herein.