OPINION OF THE COURT
Bellacosa, J.
The phrase "injury to property” in the date of discovery Statute of Limitations, CPLR 214-c (2), embraces actions for damages ensuing from exposure to any substance, including those characterized as continuing trespass and nuisance. Thus, in this action for compensatory and injunctive relief due to hazardous waste contamination of the plaintiffs’ property, we conclude that the order of the Appellate Division should be modified by reversing so much as reinstated the plaintiffs’ causes of action for damages based on continuing trespass and nuisance.
I.
From 1958 to 1969, defendant General Electric disposed of hazardous waste from its Fort Edward-Hudson Falls plant at the Moreau Site. Defendant Albert J. Smaldone, Sr. and Sons, Inc. purchased the Moreau Site in 1970. In 1980, G.E. entered into a consent order with the New York State Department of Environmental Conservation to investigate environmental impacts and to undertake remediation at seven inactive hazardous waste sites, including the Moreau Site. G.E. entered into a similar consent order with the United States Environmental Protection Agency in 1983.
In 1984, G.E. contacted plaintiff Perkett and obtained her permission to place a cluster of monitoring wells on her nearby property. In November of 1984, G.E. published the "Moreau Site Status Report to the Public” (Moreau Report), *82 which graphically illustrated that the plume of heaviest contamination extended under Perkett’s property. On December 5, 1984, G.E. sent a copy of the Moreau Report to Perkett, with her property outlined in black ink. She was specifically advised in that transmittal that "the western half [of your property] is located within the plume showing concentrations of trichloroethylene (TCE).”
Between 1984 and 1985, G.E. installed a groundwater cutoff or slurry wall to vertically enclose the original disposal pit at the Moreau Site. In 1986, plaintiff Perkett and plaintiff Jensen took title to the affected property as joint tenants. On September 9, 1986, G.E. sent plaintiff Jensen extensive technical data on the affected property and enclosed a map on which plaintiffs’ property was outlined in black ink, and a copy of the December 5, 1984 letter which had been sent to plaintiff Perkett. G.E. also notified plaintiff Jensen that well sites 10 and 22 on his property showed contamination.
Four years later, in June of 1990, plaintiffs commenced this action, alleging that the hazardous wastes deposited by G.E. had contaminated, and continued to contaminate, the plaintiffs’ property. Plaintiffs sought compensatory and punitive damages, as well as an injunction "prohibiting the continued release of chemicals into the environment.”
Defendants moved to dismiss- the complaint on the basis that the injury was discovered more than three years before the commencement of the suit and that the action was time-barred by CPLR 214-c (2). Supreme Court granted the motion to dismiss, but the Appellate Division modified and reinstated the causes of action seeking damages and injunctive relief based on the continuing trespass and continuing nuisance theory. The Appellate Division held that these causes of action were not time-barred because "being recurring wrongs they are not subject to any Statute of Limitations because they constantly accrue, thus giving rise to successive causes of action” (Jensen v General Elec. Co., 182 AD2d 903, 904 [emphasis added]). The Appellate Division then granted leave to appeal to our Court on a certified question. We modify the order of the Appellate Division by dismissing the causes of action characterized as continuing trespass and nuisance, insofar as they seek compensatory and punitive damages, on the ground that CPLR 214-c (2) specifically bars that relief.
II.
This case turns on the application and interpretation of *83 New York’s toxic tort remedial Statute of Limitations, CPLR 214-c, enacted in 1986. The pertinent portion provides:
"Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier” (CPLR 214-c [2] [emphasis added]).
Clarity and certainty of expression control when courts construe statutes. As to the very statute at issue, this Court has stated in another context:
"CPLR 214-c is a remedial statute and such statutes should be liberally construed to effectuate their aims’ * * * [and] must be given a meaning consistent with the words chosen by the Legislature —those words define the scope of the remedy that the Legislature deemed appropriate” (Enright v Lilly & Co., 77 NY2d 377, 385, n 1, cert denied — US —, 112 S Ct 197 [emphasis added]).
By its terms, CPLR 214-c (2) applies to actions for "damages for * * * injury to property caused by the latent effects of exposure to any substance.” The all-encompassing sweep of the "words chosen by the Legislature” leaves no room for judicial insertion of qualification or exceptions by interpretation, especially when the context and evolution of this historic legislation is examined (see, cg., Enright v Lilly & Co., supra, at 385, n 1; see also, Di Marco v Hudson Val. Blood Servs., 147 AD2d 156, 159; accord, Prego v City of New York, 141 Misc 2d 709, 712, affd 147 AD2d 165).
Furthermore, we discern no evidence in explicit words, legislative history or manifest intent that the Legislature chose to exempt continuing nuisance and continuing trespass actions from the comprehensive scope and language of this intensely negotiated legislation. To be sure, this breakthrough legislation was enacted to open otherwise closed courthouse doors and to replace the common-law-developed rule, which *84 was criticized as unfair. Notably, the courts repeatedly importuned the Legislature to make the desired policy change, as a matter more appropriately within its province (see, e.g., Snyder v Town Insulation, 81 NY2d 429, 435-436; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 432-434). It would be ironic for the courts in these circumstances to reformulate the enacted version of this statute in the substantial fashion urged by plaintiffs.
The statute was enacted to "provide relief to injured New Yorkers whose claims would otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries until after the limitation period had expired” (Mem of Senator R. B. Stafford, reprinted in 1986 NY Legis Ann, at 287). As Governor Cuomo emphasized in his Approval Memorandum, attending the signing of this long-awaited legislation:
"[CPLR 214-c (2)] remedies a fundamental injustice in the laws of our State which has deprived persons suffering from exposure to toxic or harmful substances from having an opportunity to present their case in court. That injustice results from an archaic rule which commences the three year time period for suit on the date that an exposure occurs. The rule fails to recognize that the adverse effects of many of these toxic substances do not manifest themselves until many years after the exposure takes place * * * This bill * * * repeals that archaic rule and replaces it with a fair and simple rule which permits a person to discover his or her injury before the statutory time period for suit begins to run” (1986 NY Legis Ann, at 288 [emphasis added]).
The Bill Jacket provides this additional contemporaneous perspective from the Attorney-General:
"[The statute] makes several significant changes in the law applicable to personal injury, property damage and wrongful death actions [by creating] a discovery rule for New York’s statute of limitations in such cases where the injury, damage or death is caused by the latent effects of exposure to substances” (Mem to Governor, in Governor’s Bill Jacket to L 1986, ch 682 [emphasis added]).
This perspective helps to buttress the view that the Legislature knew that it was altering the accrual date for all prop *85 erty damage actions caused by all substances, including those emanating from a continuing trespass and continuing nuisance condition, and intended that alteration.
A bit of history may also help to put matters in better perspective and clearer light. Prior to the enactment of CPLR 214-c (2), the Statute of Limitations began to run as of the date of exposure, regardless of the date on which the injury was discovered (see, e.g., Snyder v Town Insulation, 81 NY2d 429, supra; Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008; Thornton v Roosevelt Hosp., 47 NY2d 780; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212; Schmidt v Merchants Desp. Transp. Co., 270 NY 287). A narrow common-law exception evolved to ameliorate the harshness of this accrual rule with respect to some particular continuous wrongs. Thus, in contrast to a permanent trespass or nuisance, one commentator described the rule for cases where a continuing wrong was alleged as:
"[T]he invasion would be seen as a series of invasions, each one giving rise to a new claim or cause of action. Res judicata doctrines might require the plaintiff to sue on all those accrued when suit is brought or to be barred, but as to damages occurred after suit or judgment, new claims could be brought up until such time as the new harms became permanent. And, in parallel reasoning, the statute of limitations might have run on claims that accrue [three] years earlier, but not on claims accruing within the last [three] years. The fact that a nuisance or trespass continues over a period of time does not prevent the application of these 'continuing trespass’ rules, so long as the invasion is not a permanent one” (1 Dobbs, Remedies § 5.11 [1], at 822 [2d ed 1993]).
Thus, it was a "well-settled principle * * * that continuous injuries to real estate caused by the maintenance of a nuisance * * * create separate causes of action barred only by the running of the statute against the successive trespasses” (Galway v Metropolitan El. Ry. Co., 128 NY 132, 143; see also, 509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48, 52).
We respectfully disagree with the views in the two dissenting opinions that accept plaintiffs’ plea that this rule and its common-law rationale are somehow unaffected by CPLR 214-c *86 (2) (dissenting opn, Smith, J., at 94; dissenting opn, Hancock, Jr., J., seriatim). "The Legislature is * * * presumed to be aware of the decisional and statute law in existence at the time of an enactment” (Arbegast v Board of Educ., 65 NY2d 161, 169). The Legislature knew the rules of accrual in continuing nuisance and continuing trespass actions and knew that some nuisance and trespass cases involving damage from toxic or chemical contamination have been traditionally treated as continuing wrongs. If no Statute of Limitations at all was to apply, as the Appellate Division found, then the provision for a three-year period from discovery of the act of wrongdoing would be rendered a theoretical and superfluous appendage to the statute with no practical vitality. Statutory construction of that nature is insupportable.
The Legislature presumably also understood that its dramatic new rule of accrual, expressed as governing property damage actions due to the latent effects of exposure from any substance, was displacing the rationale for the common-law exception. It expressed no exception or qualification for continuing wrongs because none was necessary or intended. To have done so might also have required a fuller list to avoid the statutory construction maxim that the inclusion of one item is the exclusion of others. We therefore respectfully disagree with the dissent that the Legislature’s failure to explicitly recite continuing wrongs as within the general language of this statute is somehow fatal to the general sweep of the enactment (dissenting opn, Smith, J., at 93; see, McKinney’s Cons Laws of NY, Book 1, Statutes § 114 ["(W)here the Legislature in enacting a statute utilized general terms, and did not, either expressly or by implication, limit their operation, the courts will not impose any limitation”]). We also find some beneficial instruction in the statutory construction axiom that teaches:
" ’[A] general law may, and frequently does, originate in some particular case or class of cases which is in the mind of the legislature at the time, but, so long as it is expressed in general language, the courts cannot, in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy’ ” (Matter of Di Brizzi, 303 NY 206, 214; People ex rel. McClelland v Roberts, 148 NY 360, 368; McKin *87 nev’s Cons Laws of NY, Book 1, Statutes § 114, at 239).
The comprehensive, balanced, new rule gave injured parties three years from discovery to bring suit for injuries — three years that they never before had. Although under the common-law rule in the prediscovery statute era such actions continued to accrue each day, that portion of damages for injuries sustained more than three years prior also became continuously barred each day. The discovery rule, applied to continuing wrongs, allows plaintiffs who do not sit on their newly granted rights to sue for all damages incurred since the wrong began. Without the statutory discovery remedy, plaintiffs would have been left to damages actually incurred within three years of the plaintiffs’ action. The discovery rule, thus, provides enhanced protections for plaintiffs by allowing them —if they act timely — to recover for all injuries regardless of the lapse of time between the exposure and the discovery. Defendants’ and societal interests are also protected, since defendants are not left potentially liable in perpetuity. The statute thus serves a substantial public policy that traditionally benefits all society by creating some measure of repose (see generally, e.g., CPLR 211, 212, 213, 213-a, 214, 214-a, 214-b, 214-c, 215). This approach is neither harsh nor unfair. It is well balanced. This Court has only recently stated in a case rejecting a plaintiff’s claim with a consequence not unlike the one urged here:
"Determining when limitations begin to run requires a balancing of policy considerations * * * On one side of the scale are the interests of injured parties. Unquestionably, a Statute of Limitations can have a severe impact on their rights when, for instance, an injury is not discovered until years later. The Legislature has acted to ameliorate the rule in such cases in recent years (see, CPLR 214-c). Conversely, defendants are entitled to a fair opportunity to defend claims against them before their ability to do so has deteriorated * * * But under the rule proposed by plaintiffs in this case, a plaintiff would have the power to put off the running of the Statute of Limitations indefinitely” (Snyder v Town Insulation, 81 NY2d, at 435, supra [citations omitted]).
Thus, contrary to one of the dissent’s viewpoints (dissenting *88 opn, Hancock, Jr., J., at 97), the majority suffers no "obvious difficulties” in pursuing a correct, precedentially supported holding and analysis that respect the nuanced and competing rights of all the parties under the new statute, a process that reflects the rigor and strain of the exercise of judicial responsibility.
The majority, of course, agrees with the dissents that the statute is remedial. However, the generalization of the statute’s motivating thrust surely does not proclaim an all-or-nothing victory for one side only, of a long-standing, complex, societal-jurisprudential imbalance. A remedial banner does not decide the case and precise issue before us, because the devil is, as always, in the details. The Court’s obligation is to be guided by the detailed words of the statute, and despite the disquisition in Judge Hancock’s dissenting articulation, no one should be sidetracked by its mischaracterizations of the central analysis by which the case is decided.
We conclude, therefore, that the reasonable interpretation of the present statute, from the Legislature’s words and actions, is that it intended no continuing-wrong exception to its new comprehensive, across-the-board rules. As Professor Siegel commented with respect to Glod v Morrill Press Div. of Engraph (168 AD2d 954), "CPLR 214-c [2] is not an alternative in exposure cases, but a superseding rule. It offers only one world, not the best of two, and the one offered may be a good place for an exposure plaintiff most times, but not all” (Siegel, 365 New York State Law Digest, at 4 [May 1990]). Another commentator, Professor Alexander, relied on by one of the dissenters (dissenting opn, Hancock, Jr., J., at 97), appears to misgauge the implications of our outcome, as restricting " 'an injured party’s ability to take advantage of available substantive rights’ ” (Alexander, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C214-c:2, 1993 Pocket Part, at 69); rather, our view enhances that ability since, as noted, injured parties who timely commence actions, within three years after discovery of their injuries and rights, may recover for all their proven damages.
Notably, this Court’s decision in 509 Sixth Ave. Corp. v New York City Tr. Auth. (15 NY2d 48, supra) — the judicially en-grafted exception to the Statute of Limitations for continuing wrongs — grew out of a jurisprudential climate and landscape where there was no discovery rule (compare and analogize, Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, supra [Court created a discovery rule in 1969], and related cases, *89 with CPLR 214-a [statutory discovery rule for foreign object medical malpractice situations, enacted in 1975]). The rationale that drove 509 Sixth Ave. evaporates with the enactment of a parallel discovery triggering mechanism in CPLR 214-c (2) and by "the clear import of the language used in the statute” abrogates the common law (Arbegast v Board of Educ., 65 NY2d 161, 169, supra). To rule otherwise would significantly undermine the new statute. Indeed, the sweeping exception urged by plaintiffs and adopted by the dissent would swallow the postdiscovery three-year repose allowed by the statutory formula. The net practical result in countless cases, as the Appellate Division in this very case observed, would be that there would be no Statute of Limitations, and never any repose even against parties who choose to sit interminably on known rights before bringing suit. The Legislature could not have intended or effected such a substantial, self-defeating and self-contradictory exercise that functionally excises the three-year period from the statute.
It is undisputed that the plaintiffs were aware of the injury to their property as early as 1986, four years before the commencement of this action. Thus, their causes of action for damages stemming from continuing trespass and continuing nuisance could have been and should have been timely brought. Since they were not, they are time-barred by CPLR 214-c (2).
It should not be overlooked that this conclusion, will encourage timely action with ample time allowances by injured parties with knowledge of their injuries. This inducement is fair to everyone and benefits everyone proportionately. It discourages people from sitting on their rights and inhibiting early intervention and remediation, factors neutralizing or displacing the concern about some occasional anticipatory estimation of damages (see, dissenting opn, Smith, J., at 96). Finally, distinctions between the originating wrongful act and the continuing, perhaps perpetual, adverse consequences of the wrongful act add weight to our construction of the statute at issue as having an opener keyed to discovery and a complementary three-year-closer to provide some repose as part of its legislatively balanced equation (Snyder v Town Insulation, 81 NY2d 429, 435, supra).

III.

By like plain language, CPLR 214-c (2) applies by its terms *90 only to actions "to recover damages.” It does not then affect or purport to affect the availability to a party of seeking injunctive equitable relief. Law and equity have long been merged. Thus, dealing with available remedies under a new statute and pinpointing precise legal recourse makes good sense and sound law here.
Again, some history, albeit quite antiquated, may help. The doctrine of continuing wrongs originated in the English Equity Courts. The obscurity of the origin of equity jurisdiction in the Court of Chancery, from which American equity jurisdiction emanates, highlights the troubled history of the continuing wrongs theory (1 Story, Commentaries on Equity Jurisprudence as Administered in England and America §§ 38, 39, 41, 44, 45, at 42, 45-46, 49-50 [Lyon 14th ed 1918]). History and origin aside, however, we have been well taught that equity jurisdiction, was the judicial response to the "rigidity of the Common Law and its defective state” (Potter, History of Equity and Its Courts, at 40 [1931]). Thus, the "injunctive remedy is [ ] justified upon the ground that the remedy at law is inadequate” (Fiera, Particular Actions and Proceedings: Equitable Actions, at 168 [1929]). The long lesson of history thus reaches and serves the modern dilemma of this case, where causes of action for damages at law are placed in repose under CPLR 214-c (2) after three years from discovery, but appropriate injunction relief is preserved in the traditional equity form.
It is well settled that "[i]f the trespass is of a continuous or constantly recurring nature, a proper case for the granting of an injunction is shown” (Fiera, op. cit., at 168). Furthermore, it has long been recognized that:
"The most fertile field in tort for the injunction is nuisance. It is first necessary to remind ourselves that this jurisdiction is concurrent, not exclusive; equity comes to the help of the law in cases where the law would ultimately have to award damages, but that remedy would be inadequate. It does not, however, call an act a nuisance which would not receive this appellation from law; there is, as Kindersley, V.C., put it in Soltau v DeHeld, 'no such thing as an equitable nuisance’ ” (Hanbury, Modern Equity, at 604 [4th ed 1946] [emphasis in original]).
Since by its terms the discovery rule of CPLR 214-c (2) *91 applies only to actions for damages and not to injunctive relief, the common-law accrual method is applicable. Therefore, equitable injunctive relief may be available and should be scrutinized under the usual array of considerations for such matters.
Accordingly, the order of the Appellate Division should be modified, with costs to defendants, by reversing that part of the order which reinstated the plaintiffs’ causes of action for property damages stemming from conduct characterized for the purposes of the pleading and appeal as continuing trespass and continuing nuisance; as so modified the order should be affirmed, the case remitted to Supreme Court for such further proceedings as may be appropriate and the certified question answered in the affirmative.
Smith, J. (dissenting). The sole issue before this Court is whether CPLR 214-c (2) applies to actions for continuing trespass or continuing nuisance to property. Contrary to the opinion of the majority, nothing in the plain language of that statute, or its legislative history, indicates that the Legislature "intended no continuing-wrong exception to [CPLR 214-c (2)]” (majority opn, at 88). Thus, I dissent, vote to affirm the order of the Appellate Division and answer the certified question in the negative.
I
Plaintiffs commenced this action to recover damages and injunctive relief due to the alleged permanent hazardous waste contamination of their property. They base their claims on the following undisputed facts. From 1958 to 1969, the Fort Edward-Hudson Falls plant of defendant General Electric (GE) disposed of wastes by dumping them at a location designated as the Moreau site. In 1970, defendant Albert J. Smaldone, Sr. and Sons, Inc. purchased the site. In September 1980, GE entered into a consent order with the New York State Department of Environmental Conservation to investigate and undertake remedial action at seven inactive hazardous waste disposal sites. In 1983, pursuant to that consent order, GE began constructing a containment system, consisting of a containment wall that extended approximately 100 feet below the ground, at the Moreau site. Before the containment system was completed, investigations revealed that contaminants from the site were migrating southward. In November 1983, pursuant to an administrative order of the Federal Environ *92 mental Protection Agency, GE agreed to conduct further investigations to determine the extent of contamination beyond the boundaries of the Moreau site. GE completed remedial measures at that site in 1986.
Plaintiff Edith Perkett owned property near the Moreau site. During the contamination investigation, plaintiff permitted GE to install monitoring wells on her property. In December 1984, GE advised plaintiff that her property was contaminated. On July 21, 1986, Perkett and her son, plaintiff Eric Jensen, took title to the property as joint tenants with right of survivorship. In September 1986, GE informed Jensen that their property was contaminated.
Plaintiffs brought this action in June 1990, seeking compensatory damages because of the continuing contamination of their property.* Plaintiffs sought also to enjoin defendants from continuing to release chemicals into the environment surrounding their property. GE moved and Smaldone cross-moved to dismiss the action on the ground that it was barred by the three-year Statute of Limitations set forth in CPLR 214-c (2). Defendants asserted that the limitations period began to run on the date plaintiffs discovered the contamination.
Supreme Court granted the motion and cross motion to dismiss, finding that plaintiffs’ action was time-barred because they discovered the injury to their property more than three years before they commenced the action. The Appellate Division modified, on the law, by reversing so much of Supreme Court’s order as granted the motions to dismiss the causes of action in continuing trespass and continuing nuisance, denied the motions regarding said causes of action, and, as so modified, affirmed (182 AD2d 903). The Court concluded that the injuries for which plaintiffs sought to recover were recurring wrongs which are unaffected by the enactment of CPLR 214-c (2), and, thus, continue, as at common law, to accrue so long as the alleged trespass and nuisance continue (id.). The Appellate Division granted leave to appeal and certified the following question:
"Did this court err as a matter of law in modifying the order of the Supreme Court by reversing so much thereof as granted the motions to dismiss the causes of action in continuing trespass and *93 continuing nuisance, denying the motions regarding said causes of action and, as so modified, affirming the order?”
II
Pursuant to CPLR 214-c (2), actions to recover damages for personal injury or property damage caused by the latent effects of exposure to a substance must be commenced within three years from the date on which the plaintiff discovered the injury. Section 214-c (2) provides:
"Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.”
The plain language of CPLR 214-c (2) makes no reference to actions for continuing trespass or continuing nuisance, but refers only generally to actions for "injury to property caused by the latent effects of exposure to any substance or combination of substances.” The majority would construe these words to be "all-encompassing” and to include continuing nuisance and continuing trespass actions (majority opn, at 83). However, a review of the relevant case law from this Court, the legislative history of CPLR 214-c (2), and the potential adverse impact upon property rights of such a construction, reveals that a contrary result is warranted.
Generally, with respect to latent personal injury or property damage, a judicially created "accrual” or "last exposure” rule applies to preclude plaintiffs who suffer those injuries from commencing actions after the running of the applicable Statute of Limitations. Pursuant to that rule, the date of accrual of latent injury tort actions, which commences the running of the three-year Statute of Limitations (CPLR 203, 214), is governed by the date of exposure to the offending agent or condition that caused the injury. This doctrine is based upon the principle that, unless otherwise provided by the Legisla *94 turc, an action accrues "when the forces wrongfully put in motion produce injury,” and that an injury occurs "when there is a wrongful invasion of personal or property rights” (Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 300; see also, Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008, 1010-1011; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 216-219), regardless of when the injury became apparent (see, e.g., Thornton v Roosevelt Hosp., 47 NY2d 780).
A common-law exception to the last exposure rule permits plaintiffs who suffer continuous personal injury or property damage to commence successive causes of action reflecting each wrong. Under this common-law principle, "trespassers upon real property effected [sic] by an unlawful structure or nuisance, are continuous in their nature and give successive causes of action from time to time, as the injuries are perpetrated” (Galway v Metropolitan El. Ry. Co., 128 NY 132, 143). This rule is based on the principles that "continuous injuries to real estate caused by the maintenance of a nuisance * * * create separate causes of action barred only by the running of the statute against the successive trespasses, and * * * that no lapse of time or inaction merely on the part of the plaintiff * * * is sufficient to defeat the right of the owner to damages” (id., at 143). Thus, the potentially harsh results as to actions for latent personal injuries were avoided where such injuries to property constituted a continuing trespass or continuing nuisance, giving rise to successive actions (see, 509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48).
It is settled that the rules of "common law [are] never abrogated by implication * * *[, but, rather,] must be held no further changed than the clear import of the language used in a statute absolutely requires” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b]). Thus, absent an unequivocal expression of the will of the Legislature to abrogate the common-law actions for continuing trespass and continuing nuisance, there is no sound basis for concluding that "the reasonable interpretation of [CPLR 214-c (2)] * * * is that [the Legislature] intended no continuing-wrong exception” (majority opn, at 88).
The legislative history of CPLR 214-c (2) unequivocally reveals that the Legislature enacted that statute in 1986 to redress the wrongs flowing from the accrual or last exposure rule, not to abrogate the common-law rule pertaining to actions in continuing trespass and continuing nuisance. Specif *95 ically, the July 28, 1986 memorandum from the New York State Department of Commerce to Counsel to the Governor stated that "[t]he bill corrects this inequity [having the Statute of Limitations run from the date of exposure rather than the date of discovery] prospectively.” (Bill Jacket to L 1986, ch 682.) Comments from the New York State Department of Health, dated July 30, 1986, included, "[The bill] provides needed redress to those individuals whose latent injury from exposure to substances is neither discovered or discoverable with reasonable diligence until after a cause of action for personal injury has been barred by the statute of limitations” (Bill Jacket, op. cit.). Additionally, the Attorney-General, in a memorandum to the Governor dated July 21, 1986, concluded that "the changes proposed in this bill will lead to greater fairness in New York’s tort law and, most significantly, will correct a terrible injustice that has been done to thousands of this State’s citizens” (Bill Jacket, op. cit.). The New York State Nurses Association and the New York State AFL-CIO submitted similar comments. Nowhere in the legislative history is there any reference to the bill adversely affecting preexisting legal rights under the common law. Ameliorative legislation was not necessary with respect to actions involving a continuing injury to property. Indeed, the statute and the legislative history are silent as to those situations.
In Arbegast v Board of Educ. (65 NY2d 161, 169), we stated, "The Legislature is, however, presumed to be aware of the decisional and statute law in existence at the time of an enactment * * * and to have abrogated the common law only to the extent that the clear import of the language used in the statute requires [citations omitted].” The issue in that case was whether the Legislature intended to include express assumption of the risk, as differentiated in the common law from implied assumption of the risk, when it enacted CPLR article 14-A, wherein the culpable conduct of a plaintiff would diminish, instead of bar, recovery. The statute did not define the term "assumption of the risk”, and it was unclear from the legislative history whether express assumption of the risk was included. This Court acknowledged that it was established in the law that in some instances it did not violate public policy to limit liability for negligence by contract, and held that the article included only the implied assumption of the risk as a bar to recovery (id., at 169-170).
Applying the same analysis to this case compels the conclusion that actions based upon continuing trespass and continu *96 ing nuisance have not been abrogated. To conclude otherwise would render a law, created expressly to alleviate injustices under the common law, an instrument for the diminution of common-law rights.
Ill
The declaration by the majority that CPLR 214-c (2) applies to actions for continuing trespass and continuing nuisance compels plaintiffs, who have discovered an injury to their property due to the latent effects of exposure, to speculate as to the economic loss they will suffer 5, 10, 20 or more years later and then to persuade the trier of fact on that point. As this Court noted in Victorson v Bock Laundry Mach. Co. (37 NY2d 395, 403), " '[i]t is all but unthinkable that a person should be time-barred from prosecuting a cause of action before he ever had one.’ ” The tremendous potential for an unjust result under such circumstances is readily apparent, a result which the common-law rule avoids.
The nature of the relief accorded by the statute — i.e., the cause of action commencing with discovery of the injury no matter how far removed from the date when the wrong was initially inflicted — demonstrates that the Legislature’s overriding intention was to afford a remedy for the injury irrespective of the length of time that has elapsed from the initial wrong and, in that context, concerns with "repose” are at variance with the legislative intent in enacting CPLR 214-c. It may be noted that had the property here involved been sold to an unknowing third party in 1988 or 1989, that party would have a cause of action under the statute even if discovery of the injury did not occur until some 5 or 10 years thereafter. Contrary to the position taken by the majority, the statute is not concerned with "repose” but rather provides for liability depending only upon the date when the injury is discovered or should reasonably have been discovered.
In the absence of an unequivocal expression of the legislative will to cause this result, we should hold that the common-law actions for continuing trespass and continuing nuisance have been unaltered by CPLR 214-c (2).

 Plaintiff Perkett is now deceased.