OPINION OF THE COURT
Angela M. Mazzarelli, J.
Motions bearing sequence numbers 003 and 004 are consolidated for disposition.
Motion sequence number 003 concerns document disclosure. Specifically, plaintiff moves pursuant to CPLR 3124 for an *1002 order compelling defendant to produce documents pertaining to defendant’s blood bank program, Mr. Anast’s November 8, 1981 blood transfusion and defendant’s 1986 look back program. In the alternative, plaintiff moves for an order pursuant to CPLR 3126 striking defendant’s answer or precluding defendant from introducing certain evidence and defenses at trial. Finally, on this motion plaintiff moves and defendant cross-moves for the imposition of costs and/or monetary sanctions.
In motion sequence number 004, defendant moves for dismissal of the amended complaint and/or the entry of summary judgment in its favor (CPLR 3211, 3212). Defendant contends that: (1) the action is time barred by the applicable Statute of Limitations; (2) the amended complaint fails to state a cause of action; and (3) it is entitled to summary judgment as a matter of law based on undisputed facts.
BACKGROUND
Angelo Anast underwent open heart surgery in November 1981 at defendant Mount Sinai Hospital and was given a blood transfusion which allegedly infected him with the human immunodeficiency virus (HIV). During the six-year period following the surgery and blood transfusion, Mr. Anast went for regularly scheduled follow-up visits, with the frequency gradually reduced from monthly to yearly. Defendant never informed Mr. Anast during this aftercare period, which lasted into 1987, about the possibility that he had been infected with HIV. Nor did the defendant advise Mr. Anast of the risk of, transmission of HIV to his spouse, Georgia Anast, by unprotected sexual relations. According to Mr. Anast, he did not resume having sex with Mrs. Anast until 1984 or 1985.
Defendant concedes that Mr. and Mrs. Anast did not learn of their seropositive status until August 1989. After learning that she was HIV positive, Mrs. Anast continued to work as a machine operator, clearing $200 a week, until her initial hospitalization in late April 1991. Mrs. Anast was discharged on Mother’s Day, May 12, 1991, and then rehospitalized from June 12, 1991 until her death on August 3, 1991 from AIDS-related illnesses. Mr. Anast, upon learning of his seropositive status, was treated with the anti-viral drug AZT. As of October 1991, he was under consideration for treatment with DDI, then a fairly new drug. Angelo Anast died from AIDS-related illnesses on February 12, 1992.
*1003 Mr. Anast commenced this action on August 14, 1991. The original complaint alleged that defendant Mount Sinai Hospital was negligent in screening the blood used in the November 1981 transfusion and in failing to warn the plaintiff of the risk of transmission of HIV by transfusion. As originally pleaded, the complaint stated three causes of action: (1) negligence resulting in Mr. Anast’s contracting AIDS; (2) wrongful death of Mr. Anast’s spouse, Georgia Anast; and (3) loss of spousal services.
In January .1992 defendant moved for summary judgment. That motion, defendant’s application for a protective order and plaintiff’s cross motion for expedited discovery, were argued and conferenced before another Justice of this court on June 25, 1993. The transcript of that court appearance reflects an agreement between the parties that plaintiff would have 30 days to serve an amended complaint substituting a fiduciary for the deceased Angelo Anast and alleging whatever theories of liability, including new ones, which plaintiff wished.
The then-assigned Justice was apparently concerned about the viability of any negligence claims premised on a failure to adequately screen blood used in a November 1981 transfusion, given the state of knowledge about HIV and AIDS transmission and the lack of licensed testing procedures at that time (see, e.g., Hoemke v New York Blood Ctr., 912 F2d 550 [2d Cir 1990] [November 1981 transfusion; summary judgment in defendants’ favor affirmed based on state of medical knowledge]). Although at the time of Mr. Anast’s transfusion, AIDS was not even so named, nor HIV identified by the medical community as its causative agent, nor an antigen test developed and licensed, arguably other procedures could have been undertaken once certain "clusters” of what would later be learned to be common AIDS-related opportunistic infections were identified in early 1981 (Roth v New York Blood Ctr., 157 Misc 2d 122, 125 [Sup Ct, NY County 1993]). However, this court need not reach the issue of what was reasonable under the circumstances in November 1981, inasmuch as the amended complaint no longer seeks to impose liability on defendant based on its negligent blood screening procedures.
An amended complaint, substituting Kathryn Chambarry, the Anasts’ daughter and executrix of their estates, as plaintiff, was served on July 28, 1992. Five causes of action are now alleged on behalf of the estates of Mr. and Mrs. Anast: (1) negligence, on behalf of Mr. Anast’s estate, based on defen *1004 dant’s failure to include Mr. Anast in its "look back” program instituted in November 1986; (2) negligence, on behalf of Mrs. Anast’s estate, based on defendant’s failure to include Mr. Anast in its "look back” program instituted in November 1986 and thereby warning him of the risk of transmission of the virus to Mrs. Anast; (3) wrongful death of Mr. Anast; (4) wrongful death of Mrs. Anast; and (5) Mr. Anast’s loss of spousal service by reason of Mrs. Anast’s death.
MOTION TO DISMISS/SUMMARY JUDGMENT
Defendant contends that the second and fourth causes of action must be dismissed because they assert claims on behalf of Mrs. Anast’s estate, and she was not a named plaintiff in the original complaint. However, a fair reading of the original complaint reveals that the original second cause of action, while perhaps unartfully and defectively worded, was an attempt to interpose a claim for Mrs. Anast’s wrongful death. This cause of action, as originally pleaded, was defective because the wrongful death and survival statutes (EPTL 5-4.1, 11-3.2 [b]) only permit this kind of claim to be brought by the duly appointed representative of the decedent. Thus, the substitution of Mrs. Anast’s daughter, Kathryn Chambarry, as plaintiff, in lieu of her now deceased father, was procedurally correct, and cured this defect in accordance with the agreement reached at the June 1993 court appearance. It did not, as defendant now argues, constitute the commencement of a new action.
It is well settled that absent a showing of prejudice or surprise, leave to amend a complaint is to be freely granted where the proposed amendment has merit (Centrifugal Assocs. v Highland Metal Indus., 193 AD2d 385 [1st Dept 1993]; Stroock & Stroock & Lavan v Beltramini, 157 AD2d 590, 591 [1st Dept 1992]). Although the original complaint defectively alleged defendant’s responsibility in causing Mrs. Anast’s death, it did so with sufficient clarity that defendant cannot now claim prejudice or surprise by this proper amendment.
Defendant argues that the amended complaint must be dismissed because all the causes of action are time barred by the applicable Statute of Limitations. This position, however, does not withstand scrutiny. Conduct which constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician is medical practice and therefore governed by the 2lá-year Statute of *1005 Limitations (Bleiler v Bodnar, 65 NY2d 65 [1985]; CPLR 214-a). When it is alleged that a hospital or blood bank did not exercise due care in its blood screening procedures, such a claim sounds in negligence and is governed by the three-year Statute of Limitations (see, e.g., Di Marco v Hudson Val. Blood Servs., 147 AD2d 156 [1st Dept 1989]; Sweeney v Presbyterian/ Columbia Presbyt. Med. Ctr., 763 F Supp 50, 52 [SD NY 1991]; Doe v University Hosp., 148 Misc 2d 756, 758 [Sup Ct, NY County 1990]; see also, CPLR 214). However, in cases involving HIV infection by blood transfusion, the three-year period does not begin to run until the "date of discovery of the injury by the plaintiff” (CPLR 214-c [2]; see also, Di Marco v Hudson Val. Blood Servs., supra).
Although the plaintiff here does not seek, in the amended complaint, to impose liability on defendant for the negligent screening of blood in November 1981, the claims nonetheless sound in negligence and the holding of Di Marco (supra) is still applicable. Thus, the court concludes that the Statute of Limitations here must be computed as having begun to run upon the discovery by Mr. and Mrs. Anast of their seropositive status in August 1989.
This action was commenced on or about August 14, 1991 by service of the original complaint. The amended complaint was served on or about July 23, 1992, shortly before the three-year Statute of Limitations for any negligence claims expired. Thus, the negligence claims asserted on behalf of both estates are clearly timely, whether or not they related back to the original complaint. The July 23, 1992 service of the amended complaint was made within one year of the death of Mr. Anast on February 12, 1992 and within one year of the death of Mrs. Anast on August 3, 1991. Thus, the wrongful death causes of action were also timely brought (see, EPTL 5-4.1 [wrongful death action must be commenced within two years of decedent’s death, but only against persons who would have been liable to the decedent had death not ensued]). Thus, the branch of the motion which seeks dismissal of the complaint in whole or in part based on the Statute of Limitations is denied.
Mount Sinai Hospital argues that the claims asserted on behalf of Mr. Anast fail to state a cause of action. The parties agree, for purposes of this motion, that in November 1981, when Mr. Anast received his transfusion, that the risk of transmission of HIV and AIDS by blood transfusion was not yet established. Furthermore, the parties agree that it was not *1006 until approximately March 1985 that a test was licensed to screen blood for the presence of HIV (Doe v University Hosp., supra, at 757). Defendant argues that, even if it is true that it negligently excluded Mr. Anast from the November 1986 look back program, Mr. Anast suffered no injury because he had already been infected with HIV in November 1981, and therefore it was "all too clear to everyone Angelo Anast would eventually die from AIDS”. As they relate to Mr. Anast, the essence of the plaintiff’s contentions in the amended complaint are that had he been properly identified as a recipient of HIV-infected blood through the November 1986 look back program, he would have discovered his HIV-positive status almost three years earlier than he did, and he could have sought appropriate medical treatment to prolong his life. This court is not prepared to hold that such an oversight by the defendant, if proven to be true, fails to state a cause of action as a matter of law. This is particularly true to the extent that defendant moves pursuant to CPLR 3211 (a) (7). On such a motion the complaint must be liberally construed, and in the light most favorable to the plaintiff (see, Rovello v Orofino Realty Co., 40 NY2d 633 [1976]). The motion to dismiss the first and third causes of action for failure to state a cause of action is denied. Furthermore, whether the three-year delay in Mr. Anast’s discovery of his seropositive status and the concomitant delay in obtaining appropriate medical care hastened his death from AIDS-related illnesses is inherently a factual question not prone to summary disposition. Therefore, the motion for summary judgment on these two causes of action is likewise denied.
Similarly, the three causes of action which arise out of Georgia Anast’s death from AIDS-related illnesses should not be dismissed at this stage of the proceedings. Accepting the allegations of the complaint as true, Mrs. Anast’s death is directly attributable to defendant’s failure to identify Angelo Anast through a look back program as the recipient of HIV-infected blood and to then counsel him about the risk of transmission through sexual relations and clearly state a cause of action. Nor can defendant’s motion for summary judgment on these three causes of action withstand a review of the evidence.
Plaintiff has presented evidence that, by 1982, it had been established that there was a risk of transmission of the HIV by blood transfusions. On January 13, 1983, the American Red Cross and the Council of Community Blood Centers issued a *1007 joint statement indicating that the transmission of AIDS by blood transfusion was indeed a possibility. By March 1983, the Center for Disease Control issued guidelines recommending that blood collection centers ask certain questions to prospective blood donors and suggest that persons who fall into a high-risk group refrain from giving blood. On July 19, 1983, the Blood Products Advisory Committee of the United States Department of Health and Human Services noted that, although AIDS had been found in 39 States, most cases of AIDS occur in New York, San Francisco and Los Angeles.
The etiological agent for AIDS, now known as HIV, was first identified in 1984. By early 1985, a test to detect HIV became available, and the Center for Disease Control quickly recommended its use in screening the blood supply. Certain blood centers and hospitals instituted look back programs simultaneously with the implementation of HIV testing. In a look back program, the records of any donor testing HIV positive are examined for prior donations, and, if necessary, the blood is traced to determine if it has been used in a transfusion. If the blood has been transfused, the hospital or transfusing facility is contacted so it can advise the recipient’s physician.
In its March 20, 1987 Morbidity and Mortality Weekly Report (vol 36, No. 10), the United States Department of Health and Human Services wrote: "The risk of HIV transmission was low, even before screening, and has been virtually eliminated by the routine screening of donated blood and plasma. However, since HIV-infected persons are at risk for developing AIDS or related conditions themselves and may transmit infection to others, physicians should consider offering HIV antibody testing to some patients who received transfusions between 1978 and late spring of 1985. This consideration should be based on the likelihood of infection in a recipient and the likelihood of transmission from that recipient. The risk of infection is greatest if the recipient received large numbers of transfusions and if the blood was collected during the few years before screening in an area with a high incidence of AIDS.” (Emphasis added.) On June 24, 1988, the Report of the Presidential Commission on the Human Immunodeficiency Virus Epidemic made the following recommendation: "As soon as practically possible, but no later than July 1, 1989, agencies which license and certify health care facilities should make a condition for licensure, a program to notify all recipients of blood or blood products since 1977 of their possible exposure to HIV. Such look back’ notification should *1008 include a statement about the benefits of receiving counseling and testing services and provide information about where such services are delivered.”
On the record before the court, it appears that from the date of Angelo Anast’s heart surgery in November 1981 until, at the earliest, somewhere between May and November 1985, Mr. and Mrs. Anast did not have any sexual relations. Angelo Anast never had sexual relations with persons other than his wife, either before or after his 1981 heart surgery, nor was he ever an intravenous drug user. Prior to her death on August 3, 1991, Georgia Anast did not receive any blood transfusions, was not an intravenous drug user and had no sexual contact with anyone other than her husband.
The defendant’s look back program was not instituted until November 1986. Under that program, once a blood donor was found to be HIV positive, the donor center would then notify all recipients of that blood product. When Mount Sinai was notified, it would review its records in an effort to locate the individuals who had received those contaminated blood products. Once located, the individuals would be contacted, offered counseling and strongly advised to submit to HIV testing. According to defendant, Angelo Anast was never identified as a recipient of contaminated blood products under this program.
Clearly, the complaint properly states a claim against Mount Sinai Hospital for negligence and wrongful death on behalf of Georgia Anast’s estate. Plaintiff has submitted evidence from which a reasonable jury could conclude that the hospital was negligent when, after learning in 1982 to 1983 that AIDS was probably transmitted by blood transfusions, it failed to use reasonable care by not thereafter (1) warning the Anasts of this possibility so that he and/or she could take effective precautionary measures to avoid transmitting the virus; (2) advising the Anasts in March 1985 of the ability and concomitant need to be tested for HIV; and (3) timely instituting and maintaining an appropriate look back program.
Defendant’s argument that Angelo Anast was never identified in Mount Sinai’s look back program as a recipient of tainted blood is circular reasoning which misses the mark completely. The core of this claim is that he should have been so identified or at least notified that there was a possibility of having received contaminated blood during the 1981 transfusion. This is, according to plaintiff, particularly true given the *1009 fact that Mr. Anast lived and received blood from a facility located in one of three high-risk geographical areas noted by the health authorities. Thus, the motion to dismiss the second, fourth and fifth causes of action for failure to state a cause of action pursuant to CPLR 3211 (a) (7) is denied, as is the motion for summary judgment on these claims.
DISCOVERY MOTION
Plaintiff served an amended notice for discovery and inspection of documents on or about January 15, 1993 seeking seven categories or types of documents.
With respect to item numbers 1 and 2, which seek all documents relating to the source of blood used in Angelo Anast’s 1981 transfusion and the donor of that blood, it appears that documents referable to 1981 blood transfusions are no longer in existence because, by law, the hospital is only required to maintain records for seven years. Defendant cannot be asked to produce that which no longer exists. Moreover, the court notes that if such items did still exist, defendant would be remiss in its legal obligations to preserve the confidentiality of any donor’s HIV status if it merely disclosed the identity of the donor of the blood used in Mr. Anast’s transfusion (see, Roth v New York Blood Ctr., 157 Misc 2d 122, supra, for a detailed discussion of article 27-F of the Public Health Law).
Defendant has responded to item numbers 3 and 4 by providing plaintiff with a copy of all of its records which pertain to Mr. Anast, and has therefore adequately complied with the request. Plaintiff has failed to establish the relevance of item number 5 which requests documents concerning defendant’s "blood bank program” from 1983 to the present. The blood transfusion at issue took place in 1981 and the issues in this lawsuit concern Mount Sinai’s look back program, not its blood bank. Thus, the defendant need not respond.
Item number 6 requests all documents related to other cases or allegations of HIV-infected blood transfused at Mount Sinai between 1981 and the present. According to defendant, this request is overbroad, irrelevant and nondiscoverable. To the contrary, a plaintiff is entitled to disclosure of information regarding incidents giving rise to claims similar to his or her own. (Manning v Pathmark, Inc., 191 AD2d 319 [1st Dept 1993]; Alexson Mech. Contr. v Honeywell, Inc., 101 AD2d 796, 797 [2d Dept 1984].) However, any such documents must be *1010 redacted by the hospital to excise the names and addresses of particular patients in order to prevent any breach of its duty of confidentiality in accordance with the Public Health Law and the concerns addressed by the court in Roth v New York Blood Ctr. (supra).
Finally, item number 7 asks for all documents relating to defendant’s policies with regard to the tracking and warning of individuals given blood transfusions between the years of 1980 and 1985. Defendant contends that this information is contained in the look back program materials already provided to plaintiff. This material consists of 16 pages of materials apparently sent to Mount Sinai physicians by Wendy Z. Goldstein, vice-president of Hospital Operations, regarding initial contacts with patients. Plaintiff argues that it is difficult to imagine that this is the totality of the documentation on the look back program. For example, the defendant has not produced any internal memoranda related to and discussing the development, process and operation of a program once it became known that HIV could be transmitted by blood and once an antigen test was developed to detect the presence of the virus. Indeed, in the affidavit of Sherrie Howey, a former administrator of the Mount Sinai Hospital blood bank, she indicates that she "reviewed the entire Took back’ program records during the entire period it has been in effect” in order to come to the conclusion that Angelo Anast was never identified as a member of the program. Presumably, there are other records in existence which refer to this program which have not been produced. Thus, defendant shall produce Sherrie Howey, Wendy Z. Goldstein, assuming she is still employed by defendant, as well as any other hospital administrator involved in the search for responsive documents, for a deposition.
Following the deposition, plaintiff may renew this motion for preclusion and/or other sanctions, if necessary. The plaintiff’s application for costs, attorneys’ fees and sanctions is denied, as is the defendant’s cross motion for same.