[859 NYS2d 22]

BLOOMINGDALES, INC., Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent and Third-Party Plaintiff-Respondent. M-TRACK ENTERPRISES, INC., Third-Party Defendant-Respondent. M-TRACK ENTERPRISES, INC., Second Third-Party Plaintiff-Respondent, v JUDLAU CONTRACTING, INC., Second Third-Party Defendant-Respondent, et al., Second Third-Party Defendant. JUDLAU CONTRACTING, INC., Third Third-Party Plaintiff-Respondent, v JANUS INDUSTRIES, INC., Third Third-Party Defendant-Respondent.

First Department, May 15, 2008

## APPEARANCES OF COUNSEL

*Lester Schwab Katz & Dwyer, LLP*, New York City (*Harry Steinberg* and *Steven B. Prystowsky* of counsel), for appellant.

*Fabiani Cohen & Hall, LLP*, New York City (*Lisa A. Sokoloff* of counsel), for New York City Transit Authority, respondent.

*Cerussi & Spring, P.C.*, White Plains (*Lisa Conte* and *Kevin P. Westerman* of counsel), for M-Track Enterprises, Inc., respondent.

*Biedermann, Hoenig & Ruff, P.C.*, New York City (*Peter H. Cooper* and *Peter Hoenig* of counsel), for Judlau Contracting, Inc., respondent.

*Ahmuty, Demers & McManus*, Albertson (*Brendan T. Fitzpatrick* of counsel), for Janus Industries, Inc., respondent.

## OPINION OF THE COURT

LIPPMAN, P.J.

In 1999, defendant New York City Transit Authority had undertaken a project for the rehabilitation of an electrical power substation on 57th Street between Lexington and Third Avenues. As part of the work on that project, excavation was performed on Third Avenue between 59th and 60th Streets, outside plaintiff Bloomingdales, Inc.'s location at 1000 Third Avenue. In late 2000 or early 2001, when it would rain heavily, Bloomingdales would experience flooding in its lower level on the Third Avenue side of the building. Philip Bottcher, Bloom-

ingdales' facility manager, testified at his examination before trial that backups occurred on several occasions, but that Bloomingdales did not associate the backups with any work done by or for the Transit Authority. He testified that, at first, Bloomingdales assumed there was a stoppage in the storm drainpipe. However, when they were unable to clear the pipe, they assumed that it was broken and in need of repair.

In February 2002, Bloomingdales hired a contractor to repair the pipe. When the contractor excavated the street, he discovered that Bloomingdales' storm drainpipe had been cut and that a concrete duct was bisecting the pipe. Bloomingdales' storm drainpipe was supposed to run west to east from the building to the main storm sewer. However, the pipe had been severed, and a 30-inch square concrete duct containing fiberglass conduits was running north-south through the pipe.* As a result, water from the storm drainpipe was escaping into the ground, and at times backing up into the building, rather than flowing to the sewer. Bloomingdales had to install a new storm drainpipe above the concrete duct because the drainpipe needed to be pitched in order for the water to reach the sewer.

Bloomingdales filed a notice of claim against the Transit Authority for property damage, dated April 19, 2002, alleging that its storm drain lateral had been cut or damaged. Plaintiff then commenced this action in January 2003, asserting causes of action for negligence, trespass and private nuisance in order to recover the costs involved in replacing the pipe. Several third-party actions ensued. The Transit Authority filed a third-party action against M-Track Enterprises, Inc. for contribution and indemnification, alleging that it and its subcontractor, Mass. Electric Construction Co., failed to render proper services. M-Track, in turn, commenced a second third-party action against its subcontractors, Judlau Contracting, Inc. and Mass. Electric. Judlau then commenced a third third-party action against its subcontractor Janus Industries, Inc.

Judlau moved to dismiss the complaint pursuant to CPLR 3211 and 3212, asserting that it was barred by the applicable statutes of limitations (General Municipal Law § 50-e, 50-i; Public Authorities Law § 1212; CPLR 214). The Transit Authority and M-Track cross-moved for the same relief, and counsel

---

* Raymond Saint Hill, an electrical engineer for the Transit Authority, testified at his examination before trial that time sheets from the project indicated that subcontractor Janus Industries removed "a six inch dead pipe" and "excavated [an] assumed old water main" in September 1999.

for Janus submitted an affirmation in support of the motions by Judlau and the Transit Authority.

Supreme Court granted the motion and cross motions and dismissed the complaint. The court found that the cause of action for negligence accrued when the drainpipe was severed in September 1999. As a result, it determined that the action was untimely because it was not commenced within one year and 90 days after that event, as required by General Municipal Law § 50-i and Public Authorities Law § 1212. The court also found the nuisance cause of action time-barred, rejecting the argument that there was a continuing tort. Finally, the court stated that Bloomingdales could not circumvent the notice-of-claim requirement by characterizing its claim as an equitable action for continuing trespass instead of a tort claim for damages. We disagree with Supreme Court and reinstate plaintiff's causes of action for trespass and nuisance.

The Court of Appeals has held that a claim involving an underground trespass was not barred by the three-year statute of limitations for injury to property (*see 509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48 [1964]). In that case, the plaintiff, while excavating its property in 1960, discovered an encroachment belonging to the Sixth Avenue Subway which had been completed in 1939. The Court found that the resulting action was not time-barred because "an encroaching structure is a continuing trespass which gives rise to successive causes of action" (*id.* at 52).

More recently, the Court of Appeals applied the continuous wrong doctrine in the context of an action for divorce premised on the ground of spousal imprisonment (*see Covington v Walker*, 3 NY3d 287 [2004], *cert denied* 545 US 1131 [2005]).

> "Th[e] Court has applied the doctrine in certain cases such as nuisance or continuing trespass where the harm sustained by the complaining party is not exclusively traced to the day when the original objectionable act was committed. The rule is based on the principle that continuous injuries create separate causes of action barred only by the running of the statute of limitations against each successive trespass. The repeated offenses are treated as separate rights of action and the limitations period begins to run as to each upon its commission" (*id.* at 292 [citations omitted]).

Here, the concrete duct physically interrupted plaintiff's storm drainpipe and interfered with plaintiff's easement and

right of access to the sewer. This constituted a continuing trespass and resulted in successive causes of action. Thus, plaintiff's claim is not tied to the single negligent act of severing the drainpipe and was timely commenced.

A trespass claim arises when a party's easement is obstructed or infringed upon (*see Bogan v Town of Mt. Pleasant*, 278 AD2d 264 [2000], *lv dismissed* 97 NY2d 638 [2001]; *Oliphant v McCarthy*, 208 AD2d 1079, 1081 [1994]), which is exactly what happened here. The dissent maintains that any "trespass lasted no longer than the act of cutting plaintiff's drainage pipe." However, it is clear that "we have consistently characterized an unlawful encroachment as a *continuous* trespass giving rise to successive causes of action" (*509 Sixth Ave.*, 15 NY2d at 52).

Contrary to the arguments made by the moving parties and the dissent, *Nebbia v County of Monroe* (92 AD2d 724 [1983]) is not controlling here. In *Nebbia*, the County had severed plaintiff's lateral sewer line in 1979, causing a backup of sewage onto plaintiff's property in 1982. The court found that the claim was based on the severing of the sewer line, not the resulting backup of sewage onto plaintiff's property. As a result, the claim was deemed untimely under General Municipal Law § 50-i because it was not commenced within one year and 90 days after the sewer line was severed (*see Nebbia*, 92 AD2d at 725).

*Nebbia* bears some superficial similarity to this case because both cases deal with a severed pipe. However, there are significant differences. *Nebbia* does not address claims of trespass or nuisance. Rather, it seems that the plaintiff in that case sought to recover only upon the theory that the negligent severing of the pipe had caused damage to his property. Notably, Bloomingdales does not dispute that its negligence claim is time-barred and does not seek to recover for the property damage caused when water backed up into its store. Instead, it seeks to recover only for the cost of restoring the use of its easement, i.e., the cost of installing a new drainpipe.

A similar distinction was drawn in *Cranesville Block Co. v Niagara Mohawk Power Corp.* (175 AD2d 444 [1991]), where the plaintiff had an easement allowing the use of two railroad spur lines over the defendant's property. In 1983, the defendant replaced an underground gas transmission line and severed one of the spur lines' tracks. The plaintiff discovered the damage in 1986 and commenced an action for nuisance, trespass and fraud the following year. The court found that the claims based upon the act of severing the tracks were time-barred because those

claims accrued at the time the tracks were damaged. However, the court reached a different conclusion regarding the claim for damages due to defendant's interference with plaintiff's easement through the placement of its gas line. "Whether pleaded in trespass or nuisance, this continuous interference with plaintiff's right to use of the easement gives rise to successive causes of action, and the Statute of Limitations would only bar recovery of damages more than three years prior to commencement of the action" (*id.* at 446).

Correspondingly, as noted above, Bloomingdales' claims are not based upon the act of severing the drainpipe. Instead, plaintiff seeks to recover for the continuous interference with its right to use its easement. As in *Cranesville*, whether plaintiff's claims are pleaded in continuing trespass or nuisance, the conduct was a continuing wrongful intrusion upon or interference with plaintiff's easement, interfering with the use and enjoyment of the property. Therefore, the claims asserting trespass and nuisance were timely commenced within the one-year-and-90-day limitations period.

We reject the assertion that the Court of Appeals eliminated the continuing tort theory for all trespass and nuisance claims in *Jensen v General Elec. Co.* (82 NY2d 77 [1993]). In *Jensen*, the Court determined that CPLR 214-c required that an action for damage to property caused by exposure to substances be commenced within three years of the date of discovery (*see id.* at 83). However, the date of discovery rule imposed by CPLR 214-c was intended to apply to injuries arising from exposure to toxic substances (*Blanco v American Tel. & Tel. Co.*, 90 NY2d 757, 767 [1997] [CPLR 214-c held inapplicable to repetitive stress injuries caused by the use of a keyboard]). Likewise, this action is not rendered untimely by the requirement that the statute of limitations for a claim of property damage against a municipality begins to run within one year and 90 days after "the happening of the event, irrespective of when the action accrued" (*Klein v City of Yonkers*, 53 NY2d 1011, 1013 [1981]). Here, "the event," the interference with the easement, was by nature not discrete.

Having established a timely claim of trespass upon and interference with its easement, Bloomingdales should be allowed to recover for the cost of bringing that trespass to an end and restoring the functionality of the easement. To deny such a claim, as distinguished from one for the recovery of the cost of the water damage to the store, would preclude separate rights

of action for the continuing interference with the use and enjoyment of property, in this case the easement to the sewer. Applying General Municipal Law § 50-i to these facts, using the single event of the pipe's severance to commence the running of the statutory period, would be inconsistent with existing case law and leave plaintiff without a remedy for a continuous trespass upon and interference with its easement.

Accordingly, the order of the Supreme Court, New York County (Robert D. Lippmann, J.), entered August 7, 2006, which, insofar as appealed from as limited by the briefs, granted motions by defendant Transit Authority and certain of the third-party defendant contractors to dismiss, as time-barred, plaintiff's causes of action for trespass and nuisance, should be reversed, on the law, without costs, the motions denied, and the trespass and nuisance causes of action reinstated.

SWEENY, J. (dissenting). The IAS court correctly determined that plaintiff's causes of action for trespass and nuisance were time-barred. Plaintiff's claims against defendant New York City Transit Authority (NYCTA) arose out of a single negligent act, i.e., the severing of plaintiff's drainpipe, which was located in an easement over land belonging to the City of New York. The work was performed on city-owned property and there was no encroachment onto property belonging to plaintiff. Nothing happened to obstruct plaintiff's access to or use of the easement. There was no ongoing tort, and the water that backed up onto plaintiff's property originated on that property. As a result, plaintiff's continuing-tort theory is not sustainable.

Plaintiff's reliance on *509 Sixth Ave. Corp. v New York City Tr. Auth.* (15 NY2d 48 [1964]) is misplaced. There, during the course of driving piles for the construction of a new building in 1960, the plaintiff discovered for the first time an encroachment 30 feet below ground belonging to the Sixth Avenue Subway, which had been completed in 1939. As a result, plaintiff alleged that new plans had to be drawn redesigning the substructure and foundation of the building in order to take the encroachment into account. Plaintiff also alleged that it was deprived of the use of part of its basement and the construction of the new building became more expensive. The action was dismissed as time-barred by the IAS court and the dismissal was affirmed by the Appellate Division. The Court of Appeals reversed, holding that an unlawful encroachment was a continuous trespass giving rise to successive causes of action.

Here, however, defendant did not leave a permanent encroachment upon plaintiff's property or otherwise interfere with

plaintiff's use of its easement. Negligently cutting plaintiff's drainpipe does not create a continuing trespass. Further, *509 Sixth Avenue* was not governed by General Municipal Law § 50-i, the statute of limitations that would govern such an action today, as the claim at issue there arose prior to section 50-i's effective date, September 1, 1959 (L 1959, ch 788, § 8).[1]

General Municipal Law § 50-i (1), like the statute of limitations governing this action (Public Authorities Law § 1212 [2]), requires that an action against a municipality for property damage be commenced within one year and 90 days after "the happening of the event upon which the claim is based." When called upon to interpret this section, "courts have uniformly concluded that the limitation period begins to run upon the happening of the event, irrespective of when the action accrued" (*Klein v City of Yonkers*, 53 NY2d 1011, 1013 [1981]). In 1969, Public Authorities Law § 1212 (2) was amended to provide that the limitation period for actions against the New York City Transit Authority also runs from "the happening of the event upon which the claim is based" (L 1969, ch 618).

Instructive in this regard is *Nebbia v County of Monroe* (92 AD2d 724 [1983]). There, plaintiff homeowner brought an action on July 16, 1982, alleging that defendant county or its agent was responsible for the severance of his lateral sewer line from the main sewer line in June 1979, causing sewage to back up onto his property in May and June 1982. Citing *Klein,* the Appellate Division affirmed the dismissal of the complaint as time-barred pursuant to General Municipal Law § 50-i, holding, "The event upon which plaintiff's case is based is not the backup of sewage on his property in 1982, but the severance of his lateral line in June, 1979" (92 AD2d at 725). Moreover, plaintiff's characterization of its claim as one for "trespass" is inaccurate as a matter of law. A trespass is defined as "the invasion of a person's interest in the exclusive possession of land" (*Copart Indus. v Consolidated Edison Co. of N.Y.,* 41 NY2d 564, 570 [1977]). In this case, plaintiff does not claim to have been entitled to exclusive possession of the real property in question, only to have had an easement entitling it to run a drainage pipe (which was not itself real property) through land owned by the

---

1. The majority's reference to *Cranesville Block Co. v Niagara Mohawk Power Corp.* (175 AD2d 444 [1991]) is also not on point as that case dealt with a permanent encroachment upon an easement. It is also noted that *Cranesville* was not an action against a municipality or public authority and thus was not governed by a statute of limitations akin to the one at issue here.

City of New York. Indeed, plaintiff had no right to exclusive possession of any particular land through which its pipe passed.

Plaintiff cannot save its claim by characterizing it as one for trespass. Even if the interference with plaintiff's easement can be characterized as a trespass (*but see id.*; *see also* Restatement [Second] of Torts § 821D, Comment *d* ), any such trespass lasted no longer than the act of cutting plaintiff's drainage pipe, and did not continue after that act was completed.[2] The ensuing damage to plaintiff's building was the result of the pipe's being severed, not of the presence of NYCTA's conduit, as illustrated by the testimony of its facility manager. Philip Bottcher testified that when plaintiff discovered its pipe had been cut, it addressed the situation by installing a new pipe in a different location than the old pipe had occupied, following a new path passing over the conduit installed by NYCTA. It should also be noted that, contrary to the majority's assertion, plaintiff is not seeking damages for the cost of restoring an easement. The easement, as a legal right, has always been in existence and has never required restoration. Rather, the damages plaintiff seeks are for the costs it incurred in replacing a pipe that NYCTA negligently severed. Under Public Authorities Law § 1212 (2), the limitation period for an action to recover such damages plainly ran from "the happening of the event upon which the claim is based," namely, the cutting of the pipe.

Nor can plaintiff save its claim by characterizing it as one for "nuisance." In this context, a nuisance is defined as "an invasion of another's interest in the private use and enjoyment of land . . . [that] is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities" (Restatement [Second] of Torts § 822; *see Copart Indus.*, 41 NY2d at 569). Here, the interference with the use and enjoyment of plaintiff's land (i.e. its building) resulted from the cutting of its drainage pipe, which

---

**2.** Plaintiff cites *Bogan v Town of Mt. Pleasant* (278 AD2d 264 [2000], *lv dismissed* 97 NY2d 638 [2001]) and *Oliphant v McCarthy* (208 AD2d 1079 [1994]) for the proposition that interference with an easement constitutes a trespass. These cases do not, however, cast light on whether any trespass that occurred here continued after the completion of the cutting of plaintiff's drainage pipe. Notably, in *Oliphant,* the court held as time-barred claims based on two obstructions of an alleged 50-foot-wide right-of-way, notwithstanding that such alleged infringements of the right-of-way (a house and the regrading of certain property) apparently were continuing in nature (*id.* at 1081).

was a discrete, one-time event. While the pipe was cut in the course of the installation of NYCTA's conduit, the conduit itself did not interfere with plaintiff's enjoyment of its premises. In other words, the conduit was not causing water to back up into plaintiff's building. This is underscored by the fact that, as previously mentioned, when plaintiff put in a new drainage pipe, it did so without disturbing the conduit. Therefore, plaintiff's claim does not arise from any continuing nuisance.

Here, the severing of the drainpipe took place in September 1999. The backup of water into plaintiff's building started in late 2000 or early 2001. The notice of claim was served on April 19, 2002, and the action was commenced in January 2003. As the "happening of the event" took place more than one year and 90 days prior to the filing of the notice of claim, the action is barred by Public Authorities Law § 1212 (2). I would therefore affirm the IAS court's dismissal of the action.

MAZZARELLI and MOSKOWITZ, JJ., concur with LIPPMAN, P.J.; FRIEDMAN and SWEENY, JJ., dissent in a separate opinion by SWEENY, J.

Order, Supreme Court, New York County, entered August 7, 2006, reversed, on the law, without costs, the motions of defendant Transit Authority and certain of the third-party defendant contractors to dismiss, as time-barred, plaintiff's causes of action for trespass and nuisance denied and said causes of action reinstated.